MARY J. DONALD V. THE CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY.

**Railroads: Injuring Employe:** EVIDENCE. That deceased, a brakeman on a train which passed under a bridge, was found dead near the bridge and that the bridge was low enough to touch his head if he were running or trotting on the top of a furniture car like some that were in the train, is not evidence that he was struck by the bridge.

SAME: PRESUMPTIONS. Defendant's failure to show that other cars in the train were not high enough to make deceased's striking the bridge possible, raises no presumption that the train held cars high enough, where, for all that appears, plaintiff was as able to prove the composition of the train as defendant. *Clifton v. U. S.*, 45 U. S. 242, *distinguished.*

SAME: INSURANCE. An association organized by a railroad company for its employes, which agrees to pay stated sums to members or their beneficiaries in case a member is killed or injured in the employment, the company paying operating expenses and making good deficiencies after assessment, is not an "insurance company" but a "beneficiary society."

PUBLIC POLICY: CONTRACT. A stipulation in a certificate given to a member that a suit by him or his representatives to recover for his death or injury, which ripens to judgment or is compromised, shall bar recovery under the certificate, is not against public policy; and is not a violation of Code, 1307, which forbids contracts restricting liability for negligence.

RIGHTS OF BENEFICIARY. The beneficiary, his mother, is bound by the fact that the representative of deceased, in good faith, brought and compromised a suit for the death of deceased, during the minority of deceased.

*Appeal from Union District Court.*—HON. W. H. TEDFORD, Judge.

FRIDAY, JANUARY 18, 1895.

Albert A. Maiken was a son of the plaintiff, in the employ of the defendant company for some time prior

and up to September 20, 1891, when he was killed while
engaged as brakeman on a freight train.    This action
is to recover damages sustained by the plaintiff in the
loss of the services of her son, whom she alleges to have
been, at his death, some sixteen months less than
twenty-one years of age, and also to recover expenses
incurred by her in his burial.    In the third count of the
petition, plaintiff claimed eighty-eight dollars and
ninety cents as wages due her son at the time of his
death.    The fourth count is based on a certificate of
membership of her son in the relief department of the
defendant company, known as the Burlington Volun-
tary Relief Department, which department maintains
a fund for the relief of members and their relatives or
beneficiaries in cases of sickness, accident, or death.
The amount claimed in this count is five hundred dol-
lars.    The jury found for the plaintiff on the first and
second counts, for loss of services and funeral expenses,
and for the defendant on the third count, for wages
alleged to be due.    As to the fourth count, the jury was
instructed to find for the defendant.    From a judgment
on the verdict based on the first and second counts of
the petition, the defendant appealed; and, from the
order of the court directing a verdict for the defendant
on the fourth count, the plaintiff appealed.    *On defend-
ant's appeal, reversed; on plaintiff's appeal, affirmed.*

*James G. Bull* for plaintiff.

*Smith McPherson* and *Sullivan & Sullivan* for
defendant.

Granger, J.—I.    We will first notice defendant's
appeal, in which it is contended that the verdict is with-
out support in the evidence.    Maiken was killed near
Lucas, in Lucas county.    The negligence charged

against the defendant is in the construction or main-
tenance of an overhead highway bridge. Near where
the body of Maiken was found is such a bridge, and the
claim is that it is so low that Maiken, when on the top
of the freight train, was struck by the bridge as the
train passed under it, and killed. It seems to us that
such a conclusion is not to be legitimately drawn from
the evidence. Some facts in the case are with-
out dispute. · The bridge in question is located
at a curve in defendant's road, and at the curve,
as is usual, one rail of the track is higher than the
other. At this curve the difference in the height of the
rails was about one and one-half inches. By actual
measurements from the higher rail to the bridge, it is
eighteen feet eight and one-half inches. The train
from which Maiken fell was composed of freight cars of
the company, including some furniture cars. The
height of the standard or "regulation" car is not defi-
nitely fixed, but it is lower than the furniture car, which
is twelve feet six inches. The evidence as to the height
of Maiken is not in harmony, his height being fixed at
from five feet ten inches to six feet one inch. Assum-
ing the latter to be correct, the top of his head, when
standing on the higher car, would be eighteen feet seven
inches from the rail, and one and one-half inches below
the bridge. This, we think, is the most favorable view
of the evidence for plaintiff. There is no claim that
there can be a recovery, unless the death was caused by
the bridge. The only reason for thinking that Maiken
was struck by the bridge is that his body was found
near to, and a little east of it. The train was going
east. No one saw him fall, and he was not missed from
the train until it reached Chariton. It passed the town
of Lucas without stopping. In answer to the claim of
defendant that the evidence fails to show that Maiken

was struck by the bridge, plaintiff makes some reference to evidence, but the references do not change its effect from our statement of it.   The argument is something of a complaint because the defendant did not prove, or, perhaps, a claim that it might have shown, some facts not proven.   As an instance, it is said there is no proof of the height of a standard car, nor of the car next to the engine.  It is also said that defendant "could have given the exact height of every car in the train, and especially of the four or five cars in the front, of which they had the numbers. The appellee was not able to do so."   It is then claimed that, because plaintiff did not make such proof, it is a strong presumption against it; and reference is made to *Clifton v. U. S.*, 45 U. S. 242.   That action was an information charging the forfeiture of goods seized by the United States because of fraudulent practices against the revenue laws.   There was such evidence that the court "had pronounced the proof sufficient to establish the offense, unless explained and rebutted by opposing evidence."   The case then makes an application of the rule that where facts are thus established, and a party has better or conclusive evidence of an opposite character, and fails to produce it, the presumption is against him.   Such a rule does not apply to this case. Plaintiff put on the witness stand the engineer of the company, and made certain proofs as to the height of the cars, and, for all that appears in the record, might have made full proofs of the particulars complained of, but did not attempt it; and by such failure she is short of the facts to, in any way, support her claim.   If the evidence was such as, unexplained, would support the verdict, and the situation was such that if there could be a contrary showing the evidence for that purpose would presumably be in the custody or under the control of the defendant, the rule invoked would be perti-

nent. We further notice, as showing plaintiff's application of the evidence to support the verdict, this clause of the argument: "There is no doubt, had the furniture cars, whose names and numbers were known to the defendant, been of such height that Mr. Maiken could not have struck the bridge, standing or walking on the top of them, passing under said bridge, the jury would have been fully acquainted with the facts, to their satisfaction." This can only mean that, unless the jury found that they were not of such height, it could assume that they were, and such a theory must have been the one on which the verdict was found. But there is a want of consistency in the claim, in any event, for plaintiff furnished the proof that, by measurement, a furniture car of the company was as we have said, twelve feet six inches high. It is true that this was not one of the cars in the train, but the proof must have been offered to show the height of that class of cars. Plaintiff made no attempt to show the height of the cars in the train in any other way, and there is no showing or claim that the plaintiff was prevented, by the conduct of the company, from so doing. So that it may be said that the evidence is quite a strong showing against the accident being caused by the bridge, upon actual measurements, barring a feature of the evidence to be next considered. The civil engineer of the defendant company was a witness for plaintiff, and testified that a man running or trotting attained an altitude about an inch and a half greater than when standing. If that be true, and Maiken was running or trotting on a furniture car as it passed under the bridge, his head could have just reached it. But there is no proof that he was on a furniture car at that time, or that he was running or trotting, nor are there circumstances from which it could be inferred. The bridge was examined, and there was no evidence to

show that he struck it.    Nothing about the body bore evidence of contact with the bridge, more than it did of his merely falling from the train.    The evidence shows that the train rounded the curve at a high rate of speed, and it is to be inferred that Maiken fell from it; and, beyond that, the cause of his death is purely conjecture. His hat was found, and some dandruff on or in it, and that is thought to be evidence of contact with the bridge; but such claims only show the extremity demanded to sustain the verdict.    If the dandruff is to be accounted for because of a blow or injury, it is exactly as consistent with striking his head in the fall, as against the bridge, and even more so, for the evidence fairly shows that his head would not reach the bridge. There is no view of the evidence on which the verdict can be sustained:

II.    An important question is presented on plaintiff's appeal from the action of the court in directing a verdict for the defendant on the fourth count of the petition.    It is highly important that the facts should be well understood.    The relief department of the defendant is designed to raise and maintain a fund for sick and disabled employes, and, in case of death, for their relatives or beneficiaries.    The department is purely voluntary, as to its membership, and none, other than employes of the defendant company, are eligible to membership.    The certificate on which the action is based is in words as follows:    "Burlington Voluntary Relief Department.    Certificate of Membership in the Relief Fund, No. 10,633.    Office of the Superintendent, Chicago, Ill., Sept. 14, 1890.    This certifies that Albert A. Maiken, employed by the Chicago, Burlington & Quincy Railroad Company, is a member of the relief fund of that company, and is entitled to the benefits provided by the regulations of the relief department for a member of the second class,

with no additional death benefit of the first class. J. C. Bartlett, Superintendent of the Relief Department. R. D. 12."

The basis of membership is a written application, showing the moral and physical qualifications essential to it. Employment in the company in no way depends upon membership in the relief department. The benefits are graded by classes; that of Maiken being five hundred dollars in case of death; and that is the sum for which judgment is asked. The fund is obtained by monthly assessments of its members, and the amount is deducted from the monthly payments. Such amounts as are not raised from these assessments are made up by the company from its earnings; in the way of interest on the monthly balances of the relief department. The incidental expenses of the department—incident to the conduct of its business—are paid by the railway company. In case the fund of the relief department is not sufficient, the company pays all benefits due, in full. The relief department is not a separate corporation or organization, but it is organized in connection with the workings of the company, in the way of benefiting its employes. The assessments have never been sufficient to pay the benefits accruing to the members. The contract of membership is evidenced by the certificate and a "Book of Rules," or what in the certificate is designated as "Regulations of the Relief Department," which are supplied to each member. The contract of Maiken provided that the death benefit should be paid to his mother, plaintiff herein. The following are provisions of the regulations by which Maiken was to be bound, in his contract of membership: "Should a member or his legal representatives bring suit against the company * * * for damages on account of injury or death of such member, payment of benefits from the relief fund on account of the same shall not

be made until such suit is discontinued; and if suit shall proceed to judgment, or shall be compromised, all claims upon the relief fund for benefits on account of such injury or death shall be thereby precluded. I *also agree* that, in consideration of the amounts paid and to be paid by said company for the maintenance of the relief department, the acceptance of benefits from the said relief fund for injury or death shall operate as release and satisfaction of all claims for damages against said company, arising directly or indirectly from such injury or death, which could be made by him or his legal representatives." At the bottom of page 60 of the abstract, being in the first paragraph in his application, Maiken agreed to be bound by the regulations of the relief department of said company. After the death of Maiken, one J. L. Younker was appointed as administrator of his estate, and brought suit for damages to the estate in the District Court of Monroe county, which was transferred to the United States Circuit Court, and there settled by an agreement of the company to pay one thousand dollars, which amount has been paid. The provisions of the contract, and the facts of the suit by the administrator and the settlement, are pleaded in bar of this suit; and, upon the undisputed facts, the court directed the verdict for the defendant. There is no claim but that the suit by the administrator, and the settlement, were in good faith.

The contentions of plaintiff, as appellant, on this branch of the case, are under two general assignments, under each of which are discussed incidental questions. The first general proposition is "that the agreement pleaded by and between A. A. Maiken and the C., B. & Q. Railroad Company is against public policy." It should be borne in mind that the agreement referred to is the above-quoted provision, that: "Should a member or his legal representatives

bring suit against the company * * * for damages on
account of injury or death of such member, payment of
benefits from the relief fund on account of the same
shall not be paid until such suit is discontinued; and if
such suit shall be prosecuted to judgment, or shall be
compromised, all claims upon the relief fund for benefit
on account of such injury or death shall thereby be
precluded." It is said in argument that "the consent of
parties cannot oust a court of its jurisdiction, and there-
fore a contract not to resort to a judicial forum in the
settlement of disputes is not binding in law." As to
the legal proposition, there should be no dispute. But
the following is the application of it to the facts of this
case: "How much the less, then, can the bringing of
an action bar the right of another action, founded upon
an entirely different cause, and unadjudicated?" The
situation is misapprehended. In case of injuries for
which the company would be liable, Maiken or his bene-
ficiaries have the right of action for damages, and that
right is not abridged by the contract of membership in
the relief department. By mutual contributions of
both the members and the company, a fund is provided,
and is available to a member injured by the company,
whether in a way to render it liable for damages or not.
The member, in his contract, agrees with the company
that in consideration of its contributions to the fund, if
he is injured, he will not take the benefit thus provided,
and, besides, ask for damages because of the injury, but
he has his election which he will take. Such a contract
fixes his rights as a member of the relief department;
that is, upon what terms he may receive payment from
the department. It is purely defensive matter, arising
upon contract, and does not go to the jurisdiction of the
court. It is not a contract not to resort to a judicial

forum, any more than is any contract, a breach of the conditions of which would, if pleaded, defeat a recovery on it.   But such a contract is said to be against public policy.   We do not see why.   It is not a contract by which the company can escape a legal liability for its torts.   The way is entirely open for the prosecution of any claim for negligence against the company, and damages are obtainable to the full amount of the injuries sustained.   There is no phase of public policy that prohibits any person agreeing that such full compensation, or whatever he may accept as a compensation, shall be in lieu of any claim he might otherwise have against the relief fund.   It seems to be the thought, inducing the contract, that the company shall not be compelled to pay damages for the injury sustained, and also to contribute to a fund for additional relief.   Such an agreement seems not only not against public policy, but seems not inequitable. Our conclusion that the contract is not against public policy is sustained in *Griffiths v. Earl of Dudley*, 9 Q. B. Div. 555. The case of *Leas v. Pennsylvania Co.* (Ind. App.) 37 N. E. Rep. 423, was determined in May, 1894, and is very conclusive on the subject of the contract being against public policy.   The following syllabus has full support in the opinion: "Where a railroad relief association, composed of associated companies and their employes, is in charge of the companies, who guarantee the obligations, supply the facilities for the business, pay the operating expenses, take charge of and are responsible for the funds, make up all deficits in the benefit fund, and supply surgical attendance for injuries received in their service, an employe's agreement, in his voluntary application for membership, that acceptance of benefits for an injury shall release any claim of damages therefor against the railroad, is based on a valid consideration." We further quote the following as a rule of the

case: "There is no rule of public policy which con-
demns an arrangement between an employer and his
servants, looking to compromise for damages, and a
system of general mutual relief for such servants and
their families." The same principle is announced, as to
public policy, in *Johnson v. Railroad Co.* (Pa. Sup.) 29
Atl. Rep. 854. In that case it is pertinently remarked:
"The substantial feature of the contract, which dis-
tinguishes it from those held void as against public
policy, is that the party retains whatever right of action
he may have, until after knowledge of all the facts, and
an opportunity to make his choice between the sure
benefits of the association or the chance of litigation.
Having accepted the former, he cannot justly ask the
latter, in addition." See, also, *Graft v. Railway Co.* (Pa.
Sup.) 8 Atl. Rep. 206.

It is said that the contract is contrary to the express
terms of Code, section 1307, which provides that any
contract restricting the liabilities of railway
companies for the neglect or mismanagement of
their employes in connection with the operation
of railways shall not be legal or binding. But we have
said, and the authorities cited hold, that such contracts
are in no way a restriction on such liability. The
employe, when such liability arises, has his choice to
take the damages, as he may be able to establish them,
or the benefit from the association. The company is
liable for either, at the election of the employe, but not
for both. Such facts do not amount to a restriction on
liability.

There is a claim that this clause of the contract,
and the act of the administrator in bringing and com-
promising the suit, cannot avail to defeat the
plaintiff's right of action; she being the mother,
and having herself made no settlement. But,
as a beneficiary, she takes merely what her son con-
tracted she should take. Independent of his contract,

she has no claim whatever on the relief fund. The contract in no way impairs what the law would give her from his estate. This is a right he has attempted to create for her by contract. When the contract was made, he knew, as did the company, that in case of his death, as it afterward occurred, an action could be brought against the company; and he had the right, as between himself and the company to agree that if any authorized person brought such a suit, and it was compromised, the beneficiary would have no claim on the fund. As she had no prior right, she is in no position to urge a claim not in accord with the terms of the contract. She must take the certificate with the conditions imposed by the contract, or not at all.

There is a remark in the argument to the effect that Maiken could not, by his contract with the company, restrict plaintiff's right to "recover his earnings during his minority." We do not understand such a claim to be made, and the remark is fortunate, in bringing to notice a distinguishing fact or condition. To the wages of her minor son, the law gave her a right, and the situation would be widely different if the contract of membership provided that a settlement by the administrator should defeat her right to recover for his wages due her. It is only as to rights arising from the contract of membership that we are holding that she must be bound, as his beneficiary. There is a claim, also, that the relief department is an insurance company, or, at least, the question is considered. It seems to us not. It does not purport to be an insurance company. While the benefits are in the way of relief in cases of sickness, accident, or death, the manifest intent is different. The benefit association of the Philadelphia & Reading Railroad Company, considered in *Johnson v. Railroad Co., supra*, is, in all essential particulars, like the one in this case; and it is held not

to be an insurance company, but a "beneficial associa-tion." It cites as authorities *Com. v. Equitable Ben. Ass'n*, 137 Pa. St. 412, 18 Atl. Rep. 1112, and *Association v. Jones*, 154 Pa. St. 99, 26 Atl. Rep. 253. These con-siderations dispose of the material questions argued, and necessary to our conclusions, and the result is that the judgment, on defendant's appeal, is *reversed*. On plaintiff's appeal it is *affirmed*.