MARGARET HOWARD, Respondent, v. BERNHARD J. LUDWIG
　　　　　　　et al., Appellants.

171　507
p171　676
p171　677
75 AD 312

MASTER AND SERVANT — WHEN QUESTION WHO WAS MASTER OF
SERVANT WHOSE NEGLIGENCE CAUSED AN INJURY, SHOULD BE SUB-
MITTED TO THE JURY.　Where, in an action brought against a firm of mer-
chants to recover for injuries caused by the negligence of the driver of a
truck, owned by a trucking and express company, and at the time of the
accident engaged in delivering goods for such merchants to the customers
to whom they had been sold, the evidence is conflicting upon the ques-
tion whether the contract between the defendants and the express com-
pany was that the company was to deliver all of the goods sold by the
defendants in a certain district for a fixed price per week, the company to
be responsible for the goods and their safe delivery to the customers, in
which case the express company would be the master of the driver and
liable for the injury; or whether the contract was that the defendants
should pay the company a fixed sum per week for the team, truck and
driver and take charge of the delivery of the goods, sending the team
wherever business required, in which case they would become the master
of the driver while so engaged and liable for his negligent acts, a ques-
tion of fact arises which is properly submitted to the jury.
　Howard v. Ludwig, 57 App. Div. 94, affirmed.

(Argued May 14, 1902; decided June 17, 1902.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the second judicial department, entered
January 19, 1901, affirming a judgment in favor of plaintiff
entered upon a verdict and an order denying a motion for a
new trial.

　The nature of the action and the facts, so far as material,
are stated in the opinion.

　*Louis Marshall, Samuel H. Guggenheimer* and *William
Strauss* for appellants.　The defendants were not the driver's
masters and are not liable, and there could, therefore, have
been no question for the jury. (*Maxmilian* v. *Mayor, etc.*,
62 N. Y. 160; *Blake* v. *Ferris*, 5 N. Y. 48; *Baldwin* v.
*Abraham*, 57 App. Div. 67; *Murray* v. *Dwight*, 161 N. Y.
301; *Lewis* v. *L. I. R. R. Co.*, 162 N. Y. 52; *Hallett* v. *N. Y.
C. & H. R. R. R. Co.*, 167 N. Y. 543; *Catlin* v. *Peddie*, 46

App. Div. 596 ; *Reed* v. *M. S. Ry. Co.*, 58 App. Div. 97 ; *Quinn* v. *Cons. Co.*, 46 Fed. Rep. 560.) The evidence was uncontradicted that the contract was for transportation and not for the lending of a servant and outfit. (*Seaman* v. *Koehler*, 122 N. Y. 647 ; *Norris* v. *Koehler*, 41 N. Y. 42 ; *Hodgson* v. *Conklin*, 50 App. Div. 604 ; *Lane* v. *Lamke*, 53 App. Div. 395 ; *Diel* v. *Z. B. Co.*, 30 App. Div. 291 ; *Elwood* v. *W. U. T. Co.*, 45 N. Y. 549.)

*Denis A. Spellissy* for respondent. The evidence offered by plaintiff and the admissions made by defendants to prove control over the truck and its attendants in showing that it bore defendants' name and address and was engaged at the time in carrying the class of merchandise dealt in by them, admitted to be the truth, not alone established a *prima facie* case, but entitled the plaintiff to have the jury estimate its value against that produced to rebut the fact that the truck was in defendants' service. (*Diel* v. *Z. B. Co.*, 30 App. Div. 291 ; *Seaman* v. *Koehler*, 122 N. Y. 646 ; *Eisenman* v. *Miles & Co.*, 38 App. Div. 469 ; *Doherty* v. *Lord*, 8 Misc. Rep. 227 ; *Wyllie* v. *Palmer*, 137 N. Y. 253 ; *McInerney* v. *D. & H. C. Co.*, 151 N. Y. 410 ; *Higgins* v. *W. U. T. Co.*, 156 N. Y. 77; S. & R. on Neg. [4th ed.] §§ 160, 161.)

HAIGHT, J. This action was brought to recover damages for a personal injury alleged to have been occasioned through the negligence of the defendants. On the 12th day of August, 1897, the plaintiff, while driving in her surrey on the Finger Board road in the county of Richmond, in company with her children and others, received the injuries complained of as the result of a collision with a heavily loaded truck.

An issue was raised as to the negligence of the driver of the truck, which was sharply contested at the trial, but this was determined by the jury in favor of the plaintiff, and no question of law arises upon this branch of the case for our review. The chief question brought up for consideration on this appeal relates to the contention of the defendants, that the driver of the truck was not their servant or in their

employ. Upon this issue the defendants asked for a dismissal of the complaint, when the plaintiff rested, upon the ground that there was no proof of any liability on the part of the defendants, and again at the conclusion of the testimony, at which time the court was asked to direct the jury that the contract proved was simply to deliver the goods of the defendants. These motions were denied and an exception to each request was taken. In submitting the case to the jury the court charged : " Now, the test of whether these defendants are liable or not will be this : If these express people agreed with Ludwig Brothers to transport and deliver their Staten Island sales, then the expressmen are the transporters and deliverers. If they agreed to transport and deliver the defendants' Staten Island sales then Ludwig Brothers are not liable. If, however, they agreed to furnish Ludwig Brothers an outfit of truck, men and horses to be employed by Ludwig Brothers in their deliveries, then they are liable. * * * In the one case the work is being done by the expressmen and, therefore, they are the masters of the driver. In the other case the work is being done by Ludwig Brothers and they are the masters." No exception appears to have been taken to this portion of the charge and we must, therefore, assume that it correctly states the law so far as this case is concerned. The questions, therefore, raised for our determination arise upon the motions for a nonsuit and for a direction of a verdict at the end of the case, to which we have already called attention.

It appears that the defendants were dealers in furniture at 34 and 36 West Fourteenth street in the city of New York as copartners, under the name of Ludwig Brothers, and that they made sales of their goods throughout the city and surrounding country, including Staten Island in the county of Richmond. It also appears that a man by the name of Albersmyer and another by the name of Bickart were engaged in the trucking business under the name of the University Express Company, and as such owned the truck and horses and employed the driver who caused the accident. The arrange-

ment between the truckmen and the defendants appears to
rest in some confusion. It was oral and had been in opera-
tion a number of years. The truckmen furnished the defend-
ants each day with a truck, horses and driver, for the purpose
of delivering goods sold by them to their Staten Island cus-
tomers, and for this the truckmen were paid by the defend-
ants thirty dollars a week.

The defendant Ludwig testified with much distinctness that
the agreement was that the truckmen should deliver all of the
defendants' Staten Island sales for thirty dollars a week,
whether great or small in amount, and that for every truck
used by the defendants for their deliveries in the city of New
York they should pay five dollars per day. The testimony of
Ludwig is corroborated to some extent by that of Schoolhouse,
who also states that it was the understanding that in case a
package was lost the truckmen should be responsible for it.
The truckman Bickart, while conceding that they were to
furnish the defendants with a team, truck and man for their
Staten Island deliveries at thirty dollars per week, testified
that in case they had no deliveries to make upon the island,
the defendants used the man, truck and team for their New
York deliveries without additional compensation to them.
The testimony of Albersmyer and of the driver throws but
little light upon the question of the difference between these
witnesses. It further appears that there was painted upon
the truck generally used in the delivery of their Staten Island
goods the name of "Ludwig Brothers," and that the defend-
ants paid the ferriage on the trucks going from New York to
the island each day.

If, as is claimed by the defendants, the contract was that the
express company was to deliver all of the goods sold by the
defendants on Staten Island each week for thirty dollars, and
the company was to be responsible for the goods, if lost, then
unquestionably the defendants would not be liable in this
action. But if instead thereof the arrangement was that the
defendants should pay thirty dollars a week for the team,
truck and driver, and they took charge of the delivery of the

goods, sending the team to Staten Island or around New York making deliveries, as the exigency of their business required, then the relation of master and servant was created between them and the driver, and they became liable for his negligent acts.

Our examination of the testimony bearing upon this branch of the case has led us to conclude that a question of fact arose which it was necessary for the jury to determine, and that, therefore, the trial court committed no error in submitting the case to the jury.

We have examined the exceptions but find none which calls for a reversal.

The judgment should be affirmed, with costs.

PARKER, Ch. J. (dissenting). The inquiry which the court was commanded to answer at the close of the testimony was: Whose servant was he? — this driver whose carelessness occasioned the injury to this plaintiff. Was he the servant of these defendants or of the University Express Co.? This was necessarily the inquiry, because, in order to render one liable for the negligence of another, the relation of master and servant or principal and agent must exist. (*Stevens* v. *Armstrong,* 6 N. Y. 435; *King* v. *N. Y. C. & H. R. R. R. Co.,* 66 N. Y. 181; *McInerney* v. *D. & H. C. Co.,* 151 N. Y. 411. There is no pretense that the relation of principal and agent existed, and hence it was only possible to charge these defendants with the misconduct of the driver by establishing that the relation of master and servant existed between them.

A proper consideration of the evidence bearing upon that question can only be had by keeping in mind the legal reason for charging a master with responsibility for the negligent or wrongful acts of his servant. It is that the master has the privilege and responsibility of selecting, disciplining and removing his employees, and the interests of society require that he shall exercise care in the selection of servants, the character of whose service makes it possible that their careless acts may result in injury to others.

The reason found expression in *Maxmilian* v. *Mayor*, *etc., of N. Y.* (62 N. Y. 160) in these words : " This rule of *respondeat superior* is based upon the right which the employer has to select his servants, to discharge them if not competent, or skillful, or well-behaved, and to direct and control them while in his employ. The rule has no application to a case where this power does not exist."

It being the law, then, that the master is responsible for the misconduct of his servant because he had the power to select a more careful man in the first instance, or failed to discharge him when he could or should have discovered his lack of care and caution in the discharge of his duties, it would necessarily seem to follow that the test by which it is to be determined whether the relation of master and servant exists between two persons is a very simple one, namely : Did the alleged master employ and pay the servant, and could he have discharged him from the work prior to the happening of the accident ? Now, if the evidence shows conclusively that an alleged master could have done no one of these things, it must be declared that he was not the master in law, for, as is said in Shearman & Redfield on Negligence (§ 160) : " He is to be deemed the master who has the supreme choice, control and direction of the servant, and whose will the servant represents, not merely in the ultimate result of his work, but in all its details."

This brings us to an examination of the record for the purpose of ascertaining whether, applying the test I have suggested, there is any evidence tending to support a finding of fact that the driver of this truck wagon was in the employ of these defendants.

When plaintiff rested her case she had proved that upon this truck wagon there was painted the firm name and address. This evidence was, of course, quite sufficient to establish *prima facie* that the horses and wagon were the property of defendants and that the driver was in their employ, and, hence, the court properly refused to grant the defendants' motion for a nonsuit at the close of plaintiff's case.

When, however, the testimony was closed, a very different

situation was presented. The *prima facie* case had then been dissipated by undisputed evidence, which neither the court nor the jury had a right to disregard, by which it was conclusively established that defendants did not own the truck or horses and did not employ the driver or pay him. These facts were established by the testimony of defendants and five other and disinterested witnesses, two of them ex-employees of defendants, who had retired from business, the third, the driver, who worked no longer either for defendants or the express company, and the other two, the partners constituting the express company, whose interests were hostile to those of defendants, for their testimony proved beyond a question that the express company was the employer of the driver. This testimony established the following facts:

The University Express Co. employed the driver and owned the truck and horses which were carrying certain of defendants' goods at the time the accident occurred, and they owned other trucks engaged in the general express business and not used by defendants. The defendants had many similar trucks, but not as many as they required at times, and so they made an arrangement with the express company to furnish a truck, driver and helper, to deliver their goods on Staten Island at the rate of $30 per week. The express company undertook to be responsible for the safe delivery of goods intrusted to them, for lost or damaged parcels and for cash collections for goods delivered. The compensation was a fixed one, independent of the amount of work, and when all the time of the driver and truck was not employed in delivering defendants' parcels the express company used them for business not connected with defendants'. The same driver was not always used, the expressmen sending whom they pleased, and the driver in this particular case was sent to other firms for whom his employers did transportation work. It was established, therefore, that defendants did not employ the driver, did not pay him and could not discharge him. The express company had the right to discharge that driver at will, to send him or some one else in his place on any day, for the express com-

33

pany and not the defendants were responsible for losses which occurred in the delivery of goods, just as other express companies are liable, in the absence of special agreement.   So the right of selection of employees necessarily rested with the express company, and was exercised by them.

With such facts established by undisputed evidence given by disinterested witnesses, there was no possible basis upon which the jury could rest a finding that this driver was the servant of these defendants, and, hence, there was no question which the court could submit to the jury, and an attempt to submit such a question was without legal authority.

It would seem as if authorities were not needed to support a proposition that if a man hires out his horses and wagon and driver to another for a special purpose for a day, or a week, or a month, the driver does not cease to be his employee and become the employee of the hirer, any more than the horses and wagon cease to be his and become the property of the hirer, and that if an express company undertakes to do some or all of the business of a large establishment at a given price per parcel, or at an agreed sum per week, or month, its employees do not cease by operation of law to be *its* employees upon commencement of the work, and become the employees of the hirer, when the express company still pays them, and continues responsible for their care of the hirer's goods, with authority to discharge them at will.

But plain as the proposition is it is not without authority for its support.   Shearman & Redfield on Negligence (§ 102) states the rule as follows : " The master who hires out one of his servants to work for another person is liable to the hirer for such servant's negligence in the work, and this even if the particular servant was selected by the hirer himself, and unless the master abandons the entire control of the servant to the hirer, he remains liable to a stranger for their negligence.  *The hirer cannot properly be said to have control of the servants unless he has the right to discharge them and employ others in their places, in case of their misconduct or incapacity, that being the only practical means by which free*

*servants can be controlled.* If, therefore, the hirer has no such power he is not responsible to any one for the faults of the servants."

This principle has been recently applied in this court in *Murray* v. *Dwight* (161 N. Y. 301). In that case the plaintiff had been sent by his employer with a horse to assist defendant in hoisting goods, the horse to supply the power and be managed by the plaintiff. The work was done upon the premises of the defendant, and with apparatus belonging to him, and during the course of it the plaintiff was injured by the negligence of one of the defendant's employes; and it was held that the plaintiff did not become in any legal sense the servant of the defendant, and in the course of the opinion the court took occasion to distinguish all of the cases in this court relied upon by the appellant in the case at bar, namely, *Wyllie* v. *Palmer* (137 N. Y. 248); *McInerney* v. *D. & H. C. Co.* (151 N. Y. 411), and *Higgins* v. *W. U. Tel. Co.* (156 N. Y. 75), and nothing further need be added in that direction.

It is true that the defendants' counsel omitted to except to that portion of the charge of the court in which it is said, "If, however, they agreed to furnish Ludwig Brothers an outfit of truck, men and horses to be employed by Ludwig Brothers in their deliveries, then they [meaning Ludwig Brothers] are liable." But the failure to take an exception did not make that feature of the charge the law of the case to such an extent as to deprive defendants of the benefit of their exception taken to a refusal to nonsuit on the ground, distinctly made, that the case was barren of testimony tending to show that the driver was a servant of defendants. And as it does not correctly state the law applicable to the situation at the close of all the testimony, as I have already attempted to show, it becomes unnecessary to comment upon it.

I advise a reversal of the judgment and the granting of a new trial.

BARTLETT, MARTIN and VANN, JJ., concur with HAIGHT, J.; GRAY and O'BRIEN, JJ., concur with PARKER, Ch. J.

Judgment affirmed.