was all right, defendant was to accept and pay for it, and his acceptance was to be final. If it was not right, the plaintiff was to take it away and repay defendant whatever he had paid on the purchase price, etc. The plant was there in operation during the 90-day period. The defendant could not require it to be removed. Its business had to be carried on in the building after the 90 days expired. What was the defendant to do? There seemed to be a waiting for a few days, to conclude what should be done—what could be done, if anything. The plant was not satisfactory. The jury might have so found.

The parties, so far as the evidence discloses, did not talk or correspond about it for the few days intervening, and then this action was begun, and reliance is placed, not upon a compliance with the contract by the furnishing of a satisfactory plant, one in accordance with the contract and guaranties, but upon the technical claim that defendant, by using the part of the plant he did for the few days, accepted the whole plant, and such acceptance was final. The question might have been submitted to the jury, and, if a finding had been made favorable to the plaintiff, it *very likely* would have stood; but I cannot assent to the proposition that the limited use of the plant for a few days after the 90-day period had expired was *as matter of law* an acceptance of the plant. The use under the circumstances of this case for the 8 days should not be held to operate as acceptance, so as to cut off all defenses based upon failure to furnish the plant agreed upon, that would insure the results guaranteed. All concur.

---

## COLAIZZI v. PENNSYLVANIA R. CO.

(Supreme Court, Appellate Division, Fourth Department. March 8, 1911.)

1. APPEAL AND ERROR (§ 930*)—REVIEW—PRESUMPTIONS—GENERAL VERDICT.
   Where the jury found a general verdict for the defendant, the appellate court is justified in presuming that all material questions of fact were determined against plaintiff.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3700; Dec. Dig. § 930.*]

2. MASTER AND SERVANT (§ 100*)—INJURIES TO SERVANT—RELIEF DEPARTMENT CONTRACT—PUBLIC POLICY.
   A contract between a servant of a railroad and its relief department, which stipulates that the benefits from the relief department shall operate as a release of all claims for damages against the railroad arising from injuries or death, is not against public policy in absolving the railroad from liability for its negligence, for the reason that after the accident the servant may either sue the railroad or accept the benefits accruing to him under the relief contract.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 167; Dec. Dig. § 100.*]

3. MASTER AND SERVANT (§ 100*)—RAILROADS—EMPLOYÉS' RELIEF CONTRACT—STATUTES.
   A contract between a servant of a railroad and its relief department, which stipulates that the acceptance of benefits from the relief fund shall operate as a release of all claims for damages against the railroad arising from injury or death, is not in conflict with Laws 1906, c. 657,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which declares that all persons intrusted with superintendence by a railroad are vice principals and not fellow servants, and makes the corporation liable for their acts, and provides that no contract between an employé and a railroad company shall exempt the company from the provisions of this section, for there is nothing in the contract limiting or exempting the railroad from liability, and the injured employé has his election either to sue for his injuries or to accept benefits from the relief fund.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 167; Dec. Dig. § 100.*]

Appeal from Trial Term, Erie County.

Action by Domenico Colaizzi against the Pennsylvania Railroad Company. A judgment for defendant was set aside and a motion for new trial granted, from which order defendant appeals. Order reversed, and motion for new trial denied.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Frank Rumsey and H. J. Adams, for appellant.
Horace O. Lanza and Frank A. Miceli, for respondent.

SPRING, J. The action is in negligence. The plaintiff was employed as one of a section gang by the defendant, and while engaged in his duties south of the village of East Aurora the hand car on which he was working was run into by a backing freight train. He and his fellow workmen saw the train slowly approaching, and the foreman, apprehending a collision, told the men to jump from the car platform, which was only two feet above the ground. All did as directed, and the plaintiff fell under the hand car and was run over by it and also by the caboose of the backing train, and his right leg was crushed and thereafter amputated above the knee. The trial judge very fairly submitted to the jury the questions of the negligence of·the defendant and plaintiff's contributory negligence, and they have been determined adversely to the plaintiff, and the verdict is sustained by sufficient evidence.

The trial judge set aside the verdict as matter of law in order that another question in the case might receive judicial construction by the appellate courts. The memorandum filed contained the following:

"It seems to be conceded by counsel on either side that the questions here raised have not been passed upon by any of the appellate courts of the state, and that contrary views have been expressed by the courts in other states where practically the same questions were involved, and that there are at least four other cases, having passed the initial court, now awaiting the decision in this one by the Appellate Division. Under these circumstances, the rights of·the parties to this case would be better served by the granting of this motion and thereby placing the burden upon the defendant company of the appeal."

In February, 1886, the defendant, in connection with associated railroad companies, organized a Voluntary Relief Fund Society for its employés. Any employé under the age of 45 years, upon passing a satisfactory physical examination, is permitted to become a member of this organization. An agreement in writing is entered into with him

whereby he agrees that a stipulated sum is to be deducted monthly from his wages, and is to be his contribution to the fund. The members are divided into classes, and the sum paid by any member determines the class to which he belongs, and the distribution of moneys is also graded and regulated. A book of rules is given to each member clearly defining the plan and scope of the organization, including the benefits to be received by him in case either of sickness or personal injuries while in the employ of the defendant. The monthly sum to be paid is stated in the agreement, and the amounts to be received by the member are definitely set forth in the Book of Regulations given to the member at the time of the execution of the agreement. The plaintiff, in case of permanent injury, in pursuance of his agreement, was entitled to 50 cents a day for the first 52 weeks, and thereafter 25 cents a day.

Section 45 of the Regulations contained this provision:

"If the injury is of a permanent character benefits will cease when the member shall be declared by the medical examiner as able to earn a livelihood in an employment suited to his capacity."

Section 5 of the Regulations provides as follows:

"The company will take general charge of the department; guarantee the fulfillment of the obligations assumed by it in conformity with the regulations from time to time established; take charge of the funds, and be responsible for their safe-keeping; supply the necessary facilities for conducting the business of the department, and pay all the operating expenses thereof."

An advisory committee is also provided for, consisting of certain officers of the defendant and of members of the relief fund chosen by ballot by the contributing employés. This committee is vested with "general supervision of the operations of the department and see that they are conducted in accordance with the Regulations."

The membership of the relief fund is composed of from 100,000 to 110,000 employés of the defendant, and the aggregate of their contributions to the fund in 1907 was over $700,000. More than three-fourths of the entire fund was expended in payment of sick benefits to its members, and the residue on account of injuries received.

As has been seen, the appellant agrees to take charge of the fund and be responsible for its investment and safe-keeping and for its distribution in compliance with the scheme of the contract. It agrees to provide free of cost whatever surgical attendance may be needed to the injured employé, to pay all the expenses of administering, investing, and distributing the fund so that the entire amount which goes into the fund shall be used for the benefit of its members. The defendant's interest, however, extends beyond these obligations. It agrees to make up any deficits which may occur in the fund in order that each member may receive the sums to which he may be entitled in the carrying out of the provisions for his benefit. The evidence shows that the contributions of the defendant to the fund in 1907 were the sum of more than $217,000, and during the year 1908 about $234,000. The company, however, is not making the contributions solely from a philanthropic standpoint. Undoubtedly the welfare of its employés

and the development of the friendly relations between them and the officers and agents of the appellant, and the prevention of strikes and labor troubles, may have been an inducing motive for its participation in the enterprise.

Each member upon applying for membership agrees in the written application as follows:

"And I agree that the acceptance of benefits from said relief fund for injury or death shall operate as a release of all claims for damages against said company, arising from such injury or death, which could be made by or through me, and that I or my legal representatives will execute such further instrument as may be necessary formally to evidence such acquittance."

If the employés of the defendant who are injured accept these benefits, thus relieving the defendant from defending actions for personal injuries and from judgments which may be recovered against it therefor, it, to that extent, has a pecuniary interest in this fund. In construing the application and agreement, we must consider that it affects an army of employés; that it had been in force more than 20 years when the plaintiff became a member; and that the presumption is by that time the employés understood fully the import of the agreement which they had entered into.

An employé of the defendant is not required to join the relief fund. As its name indicates, membership in it is voluntary. The plaintiff was in the employ of the defendant several years before he became a member of the fund in January, 1907. He could have terminated his membership at any time without interfering with or ending his service for the defendant. So acceptance of the benefits in case the member is injured and entitled to benefits is not obligatory upon him. He has the election to accept or refuse them. If received, his cause of action for damages for the injuries sustained is lost. If he declines to receive the sums which the agreement assures to him, his membership in the relief fund is no bar to the maintenance of any action which he may have to recover damages for injuries inflicted upon him.

The plaintiff was injured, as has been stated, June 13, 1908. He was taken to a hospital, where he remained several weeks, returned to his home, and on the 31st of July of that year accepted from the relief fund department a check for $8.50, the first payment for benefit for 17 days "on account of accident," as the check or order provided. He received the money and signed the appended voucher. In a similar manner five other payments were made to him, extending down to December 28, 1908, about the time of the commencement of the action, and payments then ceased. The sums paid amounted to $85.

The plaintiff testified that he did not understand the effect of the agreement, nor did he know of the clause in the application providing that acceptance of benefits from the relief fund for injuries should operate as a release of claims for damages against the defendant. He had a Book of Regulations in his possession for nearly a year and a half and knew that 75 cents a month were taken from his wages by reason of his membership in the organization. He had been an employé of the defendant for several years, during all of which time the

organization had been in operation, and it probably was often the subject of conversation with his fellow workmen.

Again, in response to the written or printed question of the physician who examined him, he stated that the Regulations had been read to him. The physician, not at the time of the trial in the employ of the defendant or the relief fund, was a witness on behalf of the defendant. He testified that the plaintiff informed him he knew of the regulations and they had been explained to him.

The trial judge submitted this question of fact to the jury very clearly and fairly. He summarized the legal proposition for the benefit of the jury in this language:

"For all the purposes, necessary to be considered by you in the discharge of your duties here, it is sufficient to say, and I charge you, that if the plaintiff became a member of this Voluntary Relief Fund Department, as contended by the defendant, and subsequently received the benefits (which he admits he did receive), in fulfillment of this contract with the defendant, that it bars him from a recovery in this action. If he became a member of this relief department, permitted the defendant to deduct 75 cents per month from his wages each month, and received these benefits with a conscious understanding of his relation to the defendant company, then I charge you that it became a bargain which he was authorized to make, and thereby waive, upon his part, any claim for damages for an injury resulting from negligence upon the part of the defendant and he cannot recover."

The verdict of the jury established this question of fact against the plaintiff, and we therefore on this appeal must start with the proposition settled that, when the plaintiff became a member of this organization, he knew the application contained the release provision quoted and comprehended its import. There is no claim that the plaintiff was induced or urged to accept the check or order from the relief fund department, or that any advantage was taken of him, or that he did not realize the payment was on account of his membership in it and by reason of the injuries he had sustained. There is no suggestion that he was not conscious when he accepted the check or signed the voucher accompanying it.

The chief claim of the plaintiff is that the release clause in the application renders the agreement void as against public policy. The research of the counsel and what investigation I have been able to make have not resulted in discovering any authority in any appellate court in this state on this proposition.

The counsel for the respondent relies upon Johnson v. Fargo, 184 N. Y. 379, 77 N. E. 388, 7 L. R. A. (N. S.) 537, affirming 98 App. Div. 436, 90 N. Y. Supp. 725. In that case, the plaintiff, upon entering the service of the defendant, entered into an agreement in writing which contained this provision:

"I do further agree, in consideration of my employment by said American Express Company, that I will assume all risks of accident or injury which I shall meet with or sustain in the course of such employment, whether occasioned by the negligence of said company, or any of its members, officers, agents or employés, or otherwise."

He was injured in the course of his employment, and the defendant interposed the agreement as a bar to the plaintiff's cause of action.

The trial court, and the appellate courts as well, held that the provision was void as against public policy. I do not regard the case as an authority for the respondent on this appeal. The provision there was made effective at the inception of the agreement. It relieved the defendant inevitably from a burden which the law justly imposed upon it to protect and safeguard its employés. If the plaintiff was injured without fault of his own and because of the flagrant negligence of the defendant, no liability to respond in damages existed, and the defendant understood this when the agreement was executed. The employé was obliged to work to earn a livelihood. He was at the mercy of the defendant, and they did not contract on equal terms. If such an agreement were held valid, there would be no restraint on the careless operation of machinery or appliances. The plaintiff had no choice in the matter. Acceptance of the service could only be obtained by the execution of the agreement which absolved the defendant from responsibility for its own carelessness.

In the present case, at the outset, membership in the society was voluntary, although that fact is not significant on this vital proposition. The member knew when he joined the association that, if he was injured, whether he accepted the benefits accruing to him by virtue of his membership or resorted to the courts, precisely the same as if he had not entered into the organization, rested entirely with himself. He might prefer to accept the sums inuring to his benefit rather than take the chances of uncertain litigation. He might realize that the injuries were the result of his own carelessness, or that the defendant was free from fault. In that event he had a certainty in accepting the benefits. On the other hand, he might decide that he had a good cause of action, and the sums he was entitled to receive from the relief fund were inadequate compensation for the injuries sustained. Whatever conclusion he might reach he was free to carry into execution, and was not hampered in his decision by the clause referred to.

The plaintiff was seriously injured. A jury have by their general verdict, however, held that the defendant is not liable to respond in damages. Whether because he executed the application, comprehending fully its import, or whether the defendant was not responsible for the injuries he sustained, we do not know. We are justified in assuming that all these material questions of fact were decided adversely to the claim of the plaintiff. Smith v. Weston, 159 N. Y. 194, 198, 54 N. E. 38; Wolf v. Goodhue Fire Ins. Co., 43 Barb. 400, affirmed 41 N. Y. 620; People ex rel. Hanrahan v. Board of Police, 35 Barb. 644; Card v. Duryee, 66 N. Y. 651.

Serious as were his injuries, therefore, if he had no cause of action on the merits against the defendant, he relinquished nothing in accepting what he was entitled to in pursuance of his membership. The contract with the provision in it may not operate unfairly to the employés considered in their entirety. Of the 5,000 or 6,000 members injured annually, by far the larger number were trivial injuries; and yet the members received payments from the relief fund. They received back more than they contributed.

There are many authorities in other states construing provisions similar to the one in controversy, and in several the precise one, and in nearly every instance upholding their validity. I will cite only a few of these: Twaits v. Penn. R. R. Co. (N. J. Ch.) 75 Atl. 1010, 1013; Johnson v. Penna. R. R. Co., 163 Pa. 127, 134, 29 Atl. 854; Ringle v. Penna. R. R. Co., 164 Pa. 529, 30 Atl. 492, 44 Am. St. Rep. 628; Pittsburgh, etc., R. R. Co. v. Moore, Adm'r, 152 Ind. 345, 353, et seq., 53 N. E. 290, 44 L. R. A. 638; Donald v. C., P. & I. Ry. Co., 93 Iowa, 284, 293, et seq., 61 N. W. 971, 33 L. R. A. 492; Petty v. Brunswick & Western Ry. Co., 109 Ga. 666, 670, et seq., 35 S. E. 82; Eckman v. C., B. & Q. R. R. Co., 64 Ill. App. 444. The decisions in the federal court are to the same effect. Owens v. Balt. & Ohio R. R. Co., 35 Fed. 715, 1 L. R. A. 75; Shaver v. Pennsylvania Co. (C. C.) 71 Fed. 931; Day v. Atlantic Coast Line, 179 Fed. 26, 102 C. C. A. 654.

The Chancery Court of New Jersey, in Twaits v. Pennsylvania R. R. Co., 75 Atl., supra, used this language at page 1013 in giving validity to the same clause we are now considering.

"Succinctly stated, the theory and argument of the complainant are as follows: The law forbids, and therefore treats as invalid, a contract between an employer and an employé which absolves the employer from responsibility for his own negligence. This contract, entered into between Twaits, an employé of the Pennsylvania Railroad Company, and the relief department, would come under this ban and be invalid were it not for the fact that after an accident the employé is left free either to sue the company or accept the benefits accruing to him by reason of his membership in the relief department. Such is the construction placed upon this contract by our own and many other courts."

In Johnson v. Philadelphia & Reading R. R. Co., 163 Pa. 127, 134, 29 Atl. 854, a leading case, the Supreme Court of Pennsylvania, in passing upon a like provision, thus expressed itself:

"It is not the signing of the contract, but the acceptance of benefits after the accident, that constitutes the release. The injured party therefore is not stipulating for the future, but settling for the past; he is not agreeing to exempt the company from liability for negligence, but accepting compensation for an injury already caused thereby."

Second. It is urged by the respondent that the provision in the application is within the prohibition of chapter 657, Laws of 1906, known as the Barnes act, and in pursuance of which this action is brought. By that act persons intrusted with the "authority of superintendence" by a railroad company are vice principals of the corporation and not fellow servants of the injured employé. At the close of the section appears this provision:

"And no contract, receipt, rule or regulation, between an employé and a railroad corporation or receiver, shall exempt or limit the liability of such corporation or receiver from the provisions of this section."

There is nothing in the clause in the application made by the plaintiff which exempts or limits the liability of the defendant. He has two remedies available to him. As in any case where a person has an opportunity of choosing one of two or more remedies, the election of one thereafter bars him from resorting to another. The right of selection in this case is not interfered with by his agreement. It is the volun-

tary act of the member after he has been injured which may exempt the defendant from liability. The clause in the Barnes act is designed to prevent a railroad corporation from forestalling by contract an employé's right to recover for injuries which he has sustained, not from permitting him to compromise a claim after he has made one. Any act which forbade an employé from exercising untrammeled his right to adjust his damages for injuries with his employer, or which debarred him from choosing which of two remedies available to him he will adopt, would be invalid.

The authorities in other jurisdictions, where statutory prohibitions prevail similar to that contained in the Barnes act, uphold the validity of a contract like the one in suit. Donald v. C., B. & Q. R. R. Co., 93 Iowa, 284, 294, 61 N. W. 971, 33 L. R. A. 492; Hamilton v. S. K. N. & W. R. R. Co. (C. C.) 118 Fed. 92; Pittsburgh, etc., R. R. Co. v. Moore, Adm'r, 152 Ind. 345, 53 N. E. 290, 44 L. R. A. 638; Day v. Atlantic Coast Line R. R. Co., 179 Fed. 26, 102 C. C. A. 654.

Third. Nor does the relief fund come within the condemnation of section 201 of the insurance law of the state. Hunt v. Northern Central R. R. Co., 124 App. Div. 43, 108 N. Y. Supp. 267; Johnson v. Railroad, 163 Pa. 127, 133, 29 Atl. 854; Donald v. Railroad, 93 Iowa, 284, 295, 61 N. W. 971, 33 L. R. A. 492.

The case of Chicago, Burlington & Quincy Railroad Co. et al. v. McGuire (recently decided in the United States Supreme Court) 219 U. S. 549, 31 Sup. Ct. 259, 55 L. Ed. ——, is not in conflict with the conclusion here reached. In that case the statute of the state of Iowa (Code, § 2071) made every railroad corporation liable for all damages sustained by any employé "in consequence of the neglect of the agents, or by any mismanagement of the engineers or other employés thereof, and in consequence of the willful wrongs * * * of such agents or other employés." An amendment to this statute in 1898 (Laws 1898, c. 49) provided, among other things, that neither "any contract of insurance relief" between the employé and the corporation, nor the acceptance of any such relief, insurance, benefit, or indemnity by the "person injured, his widow, heirs or legal representatives after the injury from such corporation, person or association, constitute any bar or defense to any cause of action brought under the provisions of this section." But it specifically provided that any settlement for damages subsequent to the injuries received should not be invalidated by this section. The United States Supreme Court held that it was within the competency of the state Legislature to pass an act of this kind, and that was the only question that was passed upon by that court.

The order should be reversed.

Order reversed, with costs of this appeal to the appellant, and the motion for new trial denied. All concur.