WEBER v. BECKER et al.

(Supreme Court, Equity Term, Erie County. March, 1912.)

1. MUNICIPAL CORPORATIONS (§ 706*) — STREETS — COLLISION WITH TEAM — NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

　　In an action for injuries to plaintiff while riding a motorcycle by the sudden turning of a wagon loaded with iron piping which extended beyond the end of the wagon driven by defendant's servant, the negligence of the driver and plaintiff's contributory negligence are questions of fact for the determination of the trial court.

　　[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518; Dec. Dig. § 706.*]

2. APPEAL AND ERROR (§ 931*) — PRESUMPTIONS — FINDINGS — QUESTIONS OF FACT.

　　Where the trial court found generally in plaintiff's favor, it must be conclusively presumed on appeal that all questions of fact have been resolved in his favor.

　　[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3728, 3762–3771; Dec. Dig. § 931.*]

3. MASTER AND SERVANT (§ 301*)—DRIVER OF VEHICLE—LETTING TO HIRER— RELATION OF DRIVER TO HIRER.

　　B. owned horses and wagons which she let for hire, and had been in the habit of hiring teams and drivers to defendant telephone company at an agreed price per day; a bill for the services being sent at the end of each month. Having notified B. that it desired a rig, she selected a horse, wagon, and driver, who responded to the call, performing such work as the telephone company's foreman desired, until the service was completed. B. gave the driver no instructions other than to report to the telephone company. Neither did she know at just what work the team and man were to be put. The driver was never put on the telephone company's pay rolls as its employé. Plaintiff, while riding a motorcycle on a city street, was injured by the alleged negligence of the driver while hauling pipe under such arrangement for the telephone company. *Held,* that the driver was the servant of the telephone company.

　　[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1210–1216; Dec. Dig. § 301.*]

Appeal from City Court of Buffalo.

Action by Frank N. Weber, an infant, etc., against Ernest Becker and the New York Telephone Company. From a judgment of the Buffalo City Court in favor of plaintiff, defendant telephone company appeals. Affirmed.

Preston Albro, for appellant.
Clark H. Hammond, for respondent.

WHEELER, J. This action was brought to recover damages to a motorcycle by reason of a collision between the bicycle ridden by the plaintiff and a wagon driven by a person claimed to have been the servant and employé of the appellant.

　[1] It is claimed the driver of the wagon was negligent and caused

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date,. & Rep'r Indexes

the accident by suddenly turning, without warning, a wagon loaded with piping which extended some seven feet beyond the end of the wagon, so that the piping struck the plaintiff as he was about to pass the wagon, precipitating him to the ground and damaging the motorcycle on which he was riding.

We think the questions of the negligence of the driver and of the contributory negligence of the plaintiff were questions of fact for the determination of the trial court, and the evidence given sustained its findings in that respect.

The serious question, however, involved in this case, is whether the driver of the wagon is to be deemed the employé of the appellant, the New York Telephone Company, or the employé of the wife of Ernest Becker, who owned the wagon and furnished the horse and wagon and driver to the telephone company to do certain work. The plaintiff joined as parties defendant the telephone company and Ernest Becker, above named. It developed on the trial that the real owner of the horse and wagon furnished was the wife of Becker, the defendant, for whom he acted in the conduct of her business, and the trial court dismissed the action as to him, but at the same time held the telephone company liable for the damages caused.

The real question, therefore, which is before us for decision, is whether, upon the evidence, the telephone company is to be held responsible as the real master and principal under the circumstances of the case.

The evidence shows that Mrs. Becker was the owner of the horse and wagon, and had other horses and wagons which she was accustomed to let out for hire to those wishing carting done; that she hired the drivers, and had an agreement with the telephone company by which, whenever the company desired carting done, she furnished a horse and wagon and driver at an agreed price per diem. Having notified the owner that a rig was required to do carting, the owner would select the horse and wagon and driver to respond to the call. He would go to where he was directed. Often, when the day's carting was over, the foreman for the telephone company would tell the driver to report at a given place in the morning, and he would go there in response to such directions. On reaching a point where the services of the rig were needed, workmen in the employ of the telephone company would load the wagon with whatever was to be carted, and the driver would be told where to take his load. On reaching that point, the wagon would be unloaded by the workmen for the telephone company, and then other carting work for the telephone company would be done in the same way. In this general manner the horse and wagon and driver would be employed for a month at a time. The owner gave the driver no instructions after he left the barn or stable, but simply told him how to go to the telephone company, and his services after leaving seem to have been entirely under the direction of the foreman for the telephone company. The owner did not even know at just what work the telephone company put the horse, rig, and man doing. At the end of the month the owner would send a bill for the hire of the wagon, horse, and man,

and it would be paid. The driver was never put on the pay rolls of the telephone company as an employé of the company. On the day the accident happened, the rig was hauling pipe for conduits from one point to another, in the manner indicated. Is he to be deemed the employé of the owner or of the telephone company? The liability of the appellant turns on the answer given to that question.

[2] The question involved may be deemed partly a question of fact and partly a question of law. The trial court has found generally in favor of the plaintiff, and, in so far as any question of fact is involved, it must be conclusively presumed that the questions of fact have been resolved in the plaintiff's favor. Smith v. Weston, 159 N. Y. 198, 54 N. E. 38; Colaizzi v. Penn. R. R. Co., 143 App. Div. 645, 128 N. Y. Supp. 312.

[3] There still remains the question whether the evidence is sufficient to justify the finding that the driver was, within the rules of law, the employé of the telephone company.

There are two leading cases decided by the Court of Appeals of this state bearing on the disposition of this case. The first is that of Howard v. Ludwig, 171 N. Y. 507, 64 N. E. 172, upon which the plaintiff relies. The other is the case of Kellogg v. Church Charity Foundation, 203 N. Y. 191, 96 N. E. 406, on which the appellant relies.

The case of Howard v. Ludwig, 171 N. Y. 507, 64 N. E. 172, was that of an action brought against a firm of merchants to recover for injuries caused by the negligence of the driver of a truck owned by a trucking company, and at the time of the accident engaged in delivering goods for such merchants to the customers to whom they had been sold. It was held that, if the contract between the defendant and the trucking company was that the company was to deliver all the goods sold by the defendant in a certain district for a fixed price per week, the company to be responsible for the goods and their safe delivery to the customers, the trucking company would be the master of the drivers and liable for the injury. If, however, the arrangement was that the defendant should pay the company a fixed sum per week for team, truck, and driver and take charge of the delivery of goods, sending the team wherever business required, then the merchants became liable for the negligent acts of the drivers as the masters and principals.

In the later case of Kellogg v. Church Charity Foundation, 203 N. Y. 191, 96 N. E. 406, an ambulance owned by the defendant was kept at a livery stable. The proprietor of the stable furnished a horse to draw the ambulance, and a man to drive on such occasions as the defendant might indicate; the driver having been hired and paid by the livery stable keeper, who alone had the power to discharge him. The court held that the relation of master and servant was not established between the defendant and the ambulance driver and the defendant was not liable.

In the later case, the Court of Appeals discusses the case of Howard v. Ludwig, and distinguishes between them, affirming the correctness of their decision in that case. The court seems to distinguish

between a case where an arrangement exists whereby a driver in the employ of a liveryman is sent out upon special occasions, and one where the driver is placed generally for the time under the control and direction of the concern for which he is doing carting. The court says:

"The distinction between such cases and one like the present is well pointed out by Mr. Justice Moody in Standard Oil Co. v. Anderson, 212 U. S. 215, 222 [29 Sup. Ct. 252, 254 (53 L. Ed. 480)]. Where one furnishes another with men to do work for him and places them under his exclusive control, in its performance those men become pro hac vice the servants of him to whom they are furnished, and he is responsible for their negligence because the work is his work and they are his workmen for the time being. On the other hand, where work is undertaken to be performed by the person who furnishes the workmen through servants of his selection, and he retains direction and control, he remains responsible for any negligence on their part in the conduct of the work. The simplest case, and that which was earliest decided, was where horses and a driver were furnished by a liveryman. In such cases the hirer, though he suggests the course of the journey and in a certain sense directs it, still does not become the master of the driver and responsible for his negligence, unless he specifically directs or brings about the negligent act.' "

Applying these rules and distinctions to the facts of this case as best we can, we find that the horse, wagon, and driver furnished to the telephone company worked not in doing any specific trucking, nor were they furnished for any particular job, but worked continuously entire days, and often for the entire month, doing such hauling for the telephone company as it desired and directed. There appears to have been no restriction on any directions the telephone company saw proper to give the driver, saving, of course, that such directions related to trucking for which the man and horse and wagon were hired.

We must conclude that the question as to whose servant, for the time being, the driver was, is an exceedingly close and narrow one, and its disposition is not without very great embarrassment. Nevertheless, considering all the circumstances, we think the judgment appealed from should be affirmed.

So ordered, with costs of this appeal.