(46 App. Div. 596.)

### CATLIN v. T. B. PEDDIE & CO.

(Supreme Court, Appellate Division, First Department. January 5, 1900.)

1. MASTER AND SERVANT—RELATION—EVIDENCE.
    Plaintiff, in the employ of tenants of a building, was injured by the alleged negligence of a driver in the employ of a truckman who did defendants' hauling, in starting an elevator while delivering goods to defendants, who were also tenants of the building. The elevator was used by both tenants, but the driver, who delivered goods nearly every day, did not always employ the elevator in delivering them, and had received no instruc-

tions regarding its use. On the day of the accident the driver had received general instructions where to place a case of goods. *Held*, that the driver was not defendants' servant in delivering the goods, and defendants were not liable for his negligence.

2. SAME—APPEAL—HARMLESS ERROR.

Where, in an action for negligence of one claimed to have been defendants' servant, it appeared that he was a servant of another, and not in defendants' employ, rejection of evidence as to his employment, and what he did when delivering goods to defendants, was harmless.

Appeal from trial term, New York county.

Action by Louis Catlin against T. B. Peddie & Co. From a judgment in favor of defendant, dismissing the complaint, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Arnold Charles Weil, for appellant.

Malcolm R. Lawrence, for respondent.

O'BRIEN, J. The action was brought to recover damages for personal injuries sustained by the plaintiff on October 4, 1896, while employed as a porter about a freight elevator, through the alleged negligence of "the defendant's servants and employés acting in the performance of their duties to the defendant, and acting within the scope of the authority of such servants and employés, whereby the said elevator suddenly descended," causing the injuries to the plaintiff. It appears from the evidence that at the time of the accident the plaintiff was in the employ of Raphael Tuck & Sons, doing business on the upper floors of No. 388 Broadway, the ground floor and cellar being occupied by the defendant. His duties were to take trucks of goods up and down the elevator, which was not in charge of any person, and was not provided with any signal bells or speaking tubes. It was operated by means of chains and a check rope, and at each floor there was an automatic gate, which raised as the elevator came to the floor, and lowered as it descended. In the absence of other signals, the elevator chain was rattled to give notice of intention to use the elevator. The plaintiff testified that he was on the third floor at the time of the accident, engaged in pushing a truck of goods on the elevator, and when it was half on the elevator began to descend, having been set in motion by some one pulling the check rope; that the truck tipped forward in the elevator; that he called out to wait, and leaned out to catch the check rope, and while doing so the automatic gate descended, pinning him to the floor, breaking his ribs, and inflicting other injuries; that before the elevator moved he heard no noise or rattling of the chain, but on previous occasions he had heard the chain rattle, and the rattling of the chain could be heard all over the building. Other witnesses stated that they were near the elevator at the time of the accident, and did not on that occasion hear the chain rattle in order to warn the plaintiff. Henry Fahrbach, who was directly responsible for the accident, testified: That he was a driver for William Eilar, and by direction of the latter had done the defendant's carting for five years, delivered goods to him most every day, and was doing so at the time of the accident.

That when he got to the elevator that day he rattled the chain long enough, as he thought, to get an answer, but, receiving none, pulled the elevator down. That he did not always use the elevator in delivering goods, and received no instructions as to its use from the defendant. That this time when he arrived with the case of goods there was no one present, and nobody instructed him what to do with the goods, but he had received general instructions as to the disposition of cases brought there. That "sometimes they just tell me where to put it,— to deliver it, or in another place. I was to deliver it what the receipt required. Deliver the case wherever they were supposed to go." That the shipping clerk of the defendant gave him the instructions.

Motion was made to dismiss the complaint on the ground that there is no evidence from which any inference of negligence on the part of the defendant can be drawn, that the plaintiff was guilty of contributory negligence, that the accident was the result of the risk taken in the employment, and that Fahrbach was the employé of a separate and independent contractor. As this last ground, if sustained, is sufficient to justify the disposition made by the trial judge, it alone need be considered. There is no dispute but that Fahrbach, the driver, was employed and paid by Eilar, who in turn was employed by the defendant to deliver goods from time to time at the defendant's place of business, and who, pursuant to such employment, had the right to select the cartman or driver to perform the details of the employment. It is true that Eilar had been accustomed to send Fahrbach to attend to the required services, but he had the right to send instead any other driver or person in his employ to do the same work. Upon such facts, there is nothing to justify the inference that Fahrbach was the employé of the defendant. If the mere circumstance that Eilar, his employer, sent him to deliver goods for the defendant could establish the relationship of master and servant as between the defendant and Fahrbach, and thus make the defendant liable for Fahrbach's negligent acts, then, in every instance where one engages a drayman or expressman to handle his trunk or other property, he would be responsible, as master, for the negligence of the drayman or expressman. Such a doctrine has never prevailed in this state. We cannot consider the rule in other jurisdictions. The fact that Fahrbach was accustomed to do this work almost daily, and had been occupied with it for a long while, does not alter the original relation between him and the defendant, which was not that of master and servant. If, as the result of frequent employment, the defendant became Fahrbach's master, upon principle that relation would be just as well established by a single service; for it is one to be determined, not by the frequency of the acts, but by the character of the work, the extent to which the person for whom the work is done has the right of selection and direction of the one who attends to the details of the employment, and the extent to which he is under obligation to pay him directly for the service. A driver or other person who is employed by a butcher or an ice company or a milkman to bring articles daily to a house, and who may be engaged in that occupation for years, would not from that circumstance alone become the

servant of one to whom he was delivering goods, so as to render that person liable for his acts of negligence. He would not be the servant of the one to whom the goods were delivered, but of the master who employed and paid him for the work.

What has been said would determine the questions presented on this appeal, were it not that the appellant insists that evidence tending to show the relation between Fahrbach and the defendant was improperly excluded. Thus, it is pointed out that plaintiff's counsel asked a witness whether the person (meaning Fahrbach) whom he saw that day at the foot of the elevator was an employé of the defendant, which question was excluded. The objection was properly put upon the ground that a conclusion was called for, and though in excluding the question the court stated that it was immaterial, because the fact sought to be proved occurred after the accident, still we are concerned more with the correctness of the ruling made, than the reasons of the learned trial judge. Similar ruling was made to the question whether the witness had seen Fahrbach working for the defendant, and, although excluded, the ruling was harmless, for the reason that it clearly appeared that Fahrbach had worked for the defendant, and the extent and the character of his work was gone into on his examination. And we do not think that the exclusion of the question asked of Fahrbach, why he rattled the chain, had any direct bearing upon the relation between him and the defendant, even if we assume all that the appellant contends,—that it was with a view to showing that he was instructed when using the elevator to rattle the chain. So, also, the refusal to allow the witness to answer whether in carting goods for the defendant he had occasion to use the elevator was not harmful; for subsequently the ruling, if erroneous, was cured by what appeared without contradiction,—that he had occasionally used the elevator in delivering goods to the defendant.

Upon an examination of the record, we are satisfied that, whatever other fault may be found in the rulings, they were not harmful; and, for the reasons already stated (that it very clearly appeared just what Fahrbach's actual relation to the defendant was, by whom he was in fact employed, and what he did in connection with delivering goods to the defendant), we think the disposition made by the court below was right, and the judgment should be affirmed, with costs. All concur.