THOMAS F. MOORE, Respondent, *v.* RICHARD STAINTON, Appellant.

*Negligence — injury to one standing on a sidewalk from a truck backing against him — proof as to the existence of the relation of master and servant between the truck driver and merchants whose goods were being transferred on the truck which was owned by a boss cartman.*

In an action brought against Richard Stainton and the members of the firm of Perkins, Goodwin & Co. to recover damages for personal injuries sustained by the plaintiff while standing on the sidewalk of a city street with his back to the roadway talking to an acquaintance, in consequence of his being struck by a truck which was being backed over the sidewalk for the purpose of discharging its load, it appeared that the truck was owned by Stainton, a boss cartman, and was loaded with goods belonging to Perkins, Goodwin & Co., which the driver of the truck, who was in Stainton's employ, was about to deliver to the customers of that firm.

It appeared that Perkins, Goodwin & Co. were wholesale paper dealers who did not own any trucks or truck horses; that Stainton was a boss cartman who owned a large number of trucks and horses and worked for Perkins, Goodwin & Co. and other business houses, employing a superintendent, a foreman and truckmen. The carting which he did for Perkins, Goodwin & Co. was done under a contract at a certain price per ton, and it was the custom when the firm had goods which they wished carted for the shipping clerk to make out a list thereof with their destinations and hand it either to Stainton or to his superintendent. No other directions were given by or on behalf of Perkins, Goodwin & Co. to Stainton or his superintendent or to any of Stainton's employees. Stainton carried receipts in which the consignee of the goods receipted to Perkins, Goodwin & Co., and a part of their shipping clerk's office was set apart for the use of Stainton or his superintendent.

A member of the firm testified, with reference to the work undertaken by Stainton, that "He has to do it not only to our satisfaction, but according to our direction," but he stated, "We do not give any directions whatever to Mr. Stainton, except to hand him the written delivery order for the goods." The trucks used in carting goods belonging to Perkins, Goodwin & Co. did not at the time of the accident bear the name of that firm.

*Held,* that the complaint was properly dismissed as to Perkins, Goodwin & Co., as there was no evidence tending to establish that the relation of master and servant existed between the driver of the truck and Perkins, Goodwin & Co.

HIRSCHBERG, J., dissented.

APPEAL by the defendant, Richard Stainton, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 10th day of February, 1902, upon the verdict of a jury for $1,200, and also from an order entered in said clerk's office on the 13th day of February, 1902, denying the defendant's motion for a new trial made upon the minutes.

*Edward P. Mowton,* for the appellant.

*Edward J. McCrossin,* for the respondent.

JENKS, J.:

The plaintiff has recovered a judgment for damages for personal injuries. While standing on the sidewalk of a street of the city, with his back to the roadway, talking to an acquaintance, he was struck by a truck which had been swung around and was being backed over the sidewalk for the purpose of discharging its load. The truck was owned by Mr. Stainton, and the driver was about to deliver certain goods from Perkins, Goodwin & Co. to their

customers.   The plaintiff complained against Perkins, Goodwin & Co. and against Stainton.   The court dismissed his case against Perkins, Goodwin & Co., but sent his case against Stainton to the jury.   We think that this was the proper disposition of the questions of negligence and of contributory negligence, and that there is no reason to disturb the verdict.

The appellant further insists that the question of the liability of Perkins, Goodwin & Co. should have been submitted to the jury on the theory that although it is true that if the defendants were joint tort feasors either or both might be held responsible, and, therefore, though one might not complain that the other was discharged, yet if the jury found Stainton liable, it could not find Perkins, Goodwin & Co. liable, and *vice versa*, inasmuch as either one or the other was, at the time, master of the driver of the truck.   *Howard* v. *Ludwig* (57 App. Div. 94) and *Baldwin* v. *Abraham* (Id. 67, both affd., 171 N. Y. 507, 677) are cited as authorities for this contention. And it is urged that many of the essential features which warranted the submissions to the jury in those cases appear in the case at bar. As any liability in Perkins, Goodwin & Co. must arise from the relation of master and servant, we must inquire whether the evidence required the submission of the question of their mastership to the jury as one of mixed law and fact.   (*Baldwin* v. *Abraham, supra,* and authorities cited.)   In the *Baldwin* case HIRSCHBERG, J., said : " The recent decisions in this State seem to be uniform in the assertion that the true test as to whether the relation of master and servant exists is not necessarily the payment of wages, but is whether at the time of the injury complained of the alleged servant is engaged in the business of the alleged master, and subject to his direction and control.   It is not so much the actual exercise of control which is regarded, as the right to exercise such control." The plaintiff's case showed as follows : Perkins, Goodwin & Co. were wholesale paper dealers.   The firm did not own any trucking horses, nor does it appear that they owned any trucks.   Stainton was a boss cartman, who owned a large number of trucks and horses, and worked for Perkins, Goodwin & Co. and other business houses.   He employed a superintendent, a foreman and truckmen, and carted goods for Perkins, Goodwin & Co. under a contract, at a certain price per ton.   When Perkins, Goodwin & Co. " have

goods at the docks," their shipping clerk made out a list thereof, with their destinations, and handed it either to Stainton or his superintendent. No other directions were given by or on behalf of Perkins, Goodwin & Co. to Stainton or to his superintendent or to any of Stainton's employees. So far, it is difficult to see how Stainton could have had freer hand as an independent contractor, for all that was done was to indicate his work to him. But the learned counsel for the appellant relies mainly upon three pieces of testimony : *First.* That Stainton carried receipts in which the consignee receipted to Perkins, Goodwin & Co. ; *second,* that a part of the shipping clerk's office of Perkins, Goodwin & Co. was set apart for Stainton or his superintendent, for the attendance on their business ; *third,* referring to the work undertaken by Stainton, a member of the firm of Perkins, Goodwin & Co. testified : " He has to do it not only to our satisfaction, but according to our direction," and further that it was also testified to that either Stainton or his superintendent was always in Perkins, Goodwin & Co.'s place, exercising his duties and receiving instructions. The question is as to the probative force of this testimony with the other testimony in establishing the relation of master and servant between Stainton's truckmen and Perkins, Goodwin & Co. I think that the mere fact that Stainton's truckman took receipts from the consignee which ran to Perkins, Goodwin & Co. did not tend to show the relationship of master and servant. There is nothing in such practice at variance with the relationship of an independent contract for carriage. Further, if the business under the contract between Stainton and Perkins, Goodwin & Co. was so great and so constant that it would be dispatched more readily by setting apart a station for Stainton and his superintendent, and might require the constant presence there of one or the other, this did not show or tend to show that the relationship of master and servant existed between the truckman and Perkins, Goodwin & Co. As to the testimony that Stainton had to do the work not only to the satisfaction but according to the direction of Perkins, Goodwin & Co., this must be read as qualified by the consistent statement of the witness : " We do not give any direction to his drivers at all — any time. We do not give any directions whatever to Mr. Stainton except to hand him the written delivery order for the goods."

In *Howard* v. *Ludwig* (*supra*) the firm name and place of business of the defendant were on the truck, and " no definite evidence was given as to the terms of the contract," except that the truckmen furnished the truck, horses and driver for thirty dollars a week. It further appeared that the driver reported every morning with his truck and horses to the defendant, received his deliveries, attended to them, and then returned to the truckman's stable after the work was done. We were satisfied from the evidence in that case that by the contract the wagon, horses and driver were actually placed under the control of the defendants, the driver was temporarily withdrawn from the business of his original employer and transferred with his horses and trucks to the defendants to be used by them in their business, and was subject to their orders and control for the time being as if they had hired him directly. In *Baldwin* v. *Abraham* (*supra*) the original employer furnished the vans, driver and helper for a fixed period at a price per day. The vans bore the firm name of the defendant; their superintendent testified that he regarded them as his firm's wagons, and that he or his assistants exercised authority directly over the drivers, and assumed full control over the vans. We affirmed the verdict, saying: " Certainly no authority can be found in this State to support the proposition that a merchant sued for injuries inflicted upon the street by one driving a wagon bearing his name and loaded with his goods, can have the case dismissed on his simple affirmation that he had hired the driver and outfit from some unnamed and undisclosed stranger, yet the adoption of this proposition is a necessity to the reversal of the plaintiff's judgment."

But in the case at bar there appears, as I have shown, a principal who was under a contract with Perkins, Goodwin & Co., and who was at the same time engaged in similar work for other firms. This principal kept control over his own subordinates, including his drivers. There is not a particle of evidence to establish that there was any relation between Perkins, Goodwin & Co. and the driver of the truck in question, except that the owner of the truck, who was the employer of the driver, was under contract with them to do trucking for them, and that in order to do the work he received a description of the goods, their present place, and their destination, with receipts to show their delivery, and that thereupon he did his work in his own way, and by his own teams and drivers. If the

truck had borne the sign of the defendants Perkins, Goodwin & Co., as had been the case with reference to some of the trucks years before, then it might be said that the fact was more or less significant in connection with the other testimony or in view of the absence thereof, but it appeared that Perkins, Goodwin & Co., had no concern with the placing of the signs on any of the trucks or the removal of them a year and a half before.

The judgment and order should be affirmed, with costs.

GOODRICH, P. J., BARTLETT and WOODWARD, JJ., concurred; HIRSCHBERG, J., dissented upon the ground that the facts that the appellant was known as the " boss cartman " of the firm, transacted his business on the firm's premises, and for a considerable period of time had the firm's name upon his trucks, with their knowledge and without their disapproval, are sufficient to require a submission of the question to the jury.

Judgment and order affirmed, with costs.