KELLOGG v. CHURCH CHARITY FOUNDATION OF LONG ISLAND.

(Supreme Court, Appellate Division, Second Department. December 30, 1909.)

1. MUNICIPAL CORPORATIONS (§ 703*)—USE OF STREETS AS HIGHWAY—RULES OF THE ROAD AS APPLIED TO AMBULANCES.

An ambulance, used for its proper purposes, may be driven in derogation of usual rules of the road, though this does not mean that a stablekeeper, as such and in furtherance of his business, may so drive it, but that one engaged in succoring the sick, injured, or dying may transport them, facilitated by such paramount right.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 703.*]

2. MASTER AND SERVANT (§ 317*)—INJURY TO THIRD PERSON—NEGLIGENCE OF AMBULANCE DRIVER—PERSONS LIABLE.

The privilege of driving an ambulance in derogation of the usual rules of the road extends to a hospital corporation or others similarly engaged, to be exercised in expediting their business, and they are primarily responsible for the just use of the concession, and may not delegate the superior right to a stablekeeper, who furnishes the horse and driver, so as not to be liable for damages for an injury due to the driver's negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1254; Dec. Dig. § 317.*]

3. MUNICIPAL CORPORATIONS (§ 705*)—USE OF STREETS AS HIGHWAY—NEGLIGENCE OF AMBULANCE DRIVER IN EXERCISE OF SPECIAL PRIVILEGE.

Where an ambulance driver drove on the wrong side of the way under an apparent claim of right, and kept it in making a turn, thereby tending to drive aside a person who had the right of way, it indicated a perversive and negligent use of his special privilege as to the right of way, and was an abuse thereof he hardly would have ventured, if driving with his common rights unaugmented.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 705.*]

4. MASTER AND SERVANT (§ 317*)—INJURY TO THIRD PERSONS—EXISTENCE OF RELATION—NEGLIGENCE OF AMBULANCE DRIVER.

An ambulance of a hospital corporation was furnished by a stablekeeper, but the ambulance was labeled with its name, and the driver wore

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a cap owned and furnished by it, and on which its name likewise appeared, and he was ordered by it to do its business, and placed under its doctors' command, when he negligently injured a person in the street in exercise of the special privilege as to the right of way to which it was entitled. *Held*, that he should be regarded as the servant of the hospital, for whose acts it was responsible.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1254; Dec. Dig. § 317.*]

Rich, J., dissenting.

Appeal from Trial Term, Kings County.

Action by George A. Kellogg against the Church Charity Foundation of Long Island for personal injuries. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

See, also, 128 App. Div. 214, 112 N. Y. Supp. 566.

Argued before HIRSCHBERG, P. J., and WOODWARD, THOMAS, RICH, and MILLER, JJ.

Edward M. Shepard (Omri F. Hibbard, on the brief), for appellant. John J. Kuhn (W. W. Taylor, on the brief), for respondent.

THOMAS, J. The question whether the driver was the defendant's servant was necessarily decided upon the former appeal, but if it was decided erroneously the error should be corrected at this time. I think that it was decided correctly. When the driver started on the errand in the course of which the accident happened, he was invested with the apparent character of the defendant's servant. The ambulance driven was labeled "St. John's Hospital." The driver wore a cap owned and furnished by the hospital, on which the words "St. John's Hospital" appeared. Such were the defendant's declarations to the public that the driver was the defendant's servant, engaged in the defendant's business, and clothed with such rights and immunities as the defendant enjoyed in the use of the streets. This manifestation was an invitation to the public to consider the driver the defendant's servant, to respect him as such, to grant him by curtesy the latitude that his mission demands in the matter of speedy passage, and to yield him the rights in the street that belonged to a real servant of the defendant. Such was the defendant's presentation of the driver to the public. The status thus given to the driver did in fact obtain for him privileges and immunities that belonged to the defendant. He thereby became the acknowledged servant of the defendant, abroad on its urgent and merciful errands, and entitled to the right of way allowed to those operating ambulances for their proper purposes. An ambulance in such use may be driven in derogation of certain usual rules of the road. That does not mean that a stablekeeper, in his capacity as such, and in furtherance of his business, may so drive a vehicle in the form of an ambulance, but that a person engaged in the business of succoring the sick, injured, or dying may transport them, facilitated by such paramount right.

The defendant accepts and enjoys the superior right. It subjects the public to its right of transit, but urges that the responsibility of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

exercising the right may be relegated to the stablekeeper, so that the burden of meeting damages will fall upon him, and not on it. By such contention the stablekeeper has the right because he is driving an ambulance, and the considerate exercise of the unusual privilege is vested in him. It is my view that the privilege is extended to the defendant, or others similarly engaged, to be exercised by them in the expedition of their business, and that such persons are primarily responsible for the just use of the concession. Even if the present accident did not happen in the exercise of this power, it is unimportant. It was one of the privileges which the defendant sent the driver out to use, if occasion required, and manifests his representative capacity. But I am not convinced that it was not the intention of the driver to exercise such privilege when the accident happened. His action leading up to the accident indicates a perversive and negligent use of his privilege. He was driving on the wrong side of the way under an apparent claim of right, and he kept to the wrong side in making the turn, thereby tending to drive the decedent aside. The decedent had the right of way. The driver took it from him. If it be said that such action was not a use of the privilege of right of way, it may be conceded; but it was an abuse of that privilege which he hardly would have ventured, had he been driving in the stablekeeper's place, with his common rights in the road unaugmented.

But it is urged that the privilege is extended to the ambulance, and not to the hospital, and that " the right of way belongs to the ambulance quoad ambulance, and not to its owner." I assume that this means that the favor is granted to an ambulance in use for the purpose of transporting the sick. However, I cannot conceive that the privilege is extended to a vehicle, but to one operating the same. So the question would recur: Who was operating this vehicle? A stablekeeper might be operating it, and so make the privilege run to him. In the present instance, did the privilege accrue to the "ambulance quoad ambulance"? Then it ran to the defendant's ambulance, in the possession of the defendant, in its use, under the control of its doctor engaged in its business, proclaimed to the world in a writing to be its ambulance, driven by a man wearing its cap of authority and announced as its servant. What, now, does the legend on the cap mean? What would it mean in any other relation of life? What, upon the cap of a porter at an inn, a transportation agent at a depot, a conductor on a car? The present is a hard case for the defendant, and a great misfortune for the plaintiff. But, if the defendant is liable at all, it must be judged as others would be judged.

If an ordinance granted to transportation wagons some special right in the use of streets, and a given company marked the wagons used with its name, dressed the drivers in its livery, and marked its name thereon, and sent them on the street to convey passengers, and sent its agent to superintend the business, and to command the driver when and where to go, and when to stop, would it, in case of a collision, be heard to say to a person injured on the street: "This is my lettered wagon, my inscribed livery, my conductor, my business, but the horses and harness belong to another, and he hires and pays the man who drives them, and the liability for the collision attaches only to him?"

If a railroad company were operating over the tracks of another company, and marked the cars and locomotive with its name, and put its name on the conductor's cap, and was engaged in carrying its passengers, could it, in case of a collision with a person at a crossing, acquit itself of liability by showing that it hired the engine and the engineer by the trip of another company? I consider that there could be no such escape in either of the cases supposed. The driver was initially the stablekeeper's servant; the defendant obliterated all suggestion of it; it sent him out disguised as its servant; it stamped him as its man; it established and proclaimed him the driver of its ambulance; it ordered him to do its business; it placed its doctor in command of him; it invited his acceptance by the public as its servant, and should not be permitted to relegate the responsibility for his acts to the stablekeeper, remote, unrevealed, and to all appearances disclaimed in the matter.

The judgment and order should be affirmed, with costs.

MILLER, J. (concurring). The first trial of this case, in which all of the questions now urged were raised, resulted in a nonsuit, and the judgment entered thereon was reversed by this court. 128 App. Div. 214, 112 N. Y. Supp. 566. While Mr. Justice Gaynor, writing for the court, discussed but one question, i. e., the liability of charitable corporations to strangers for the negligence of servants, if any of the propositions now, as then, urged by the defendant are tenable, that judgment should have been affirmed. Nice questions are involved, a reason, perhaps, for a review by the Court of Appeals, but not for us to send the case back for a third trial, after which the parties will be in precisely the situation they were in after the first trial. While it does not seem to me that those questions are now in this court, the point discussed by Mr. Justice RICH deserves notice.

The answer admitted that the defendant owned, controlled, and managed the St. John's Hospital in the borough of Brooklyn, and in connection with it owned and used an ambulance. The plaintiff made a prima facie case by showing that he was injured through the carelessness of the driver of an ambulance, owned by the defendant; that the words "St. John's Hospital" were on the driver's cap; and that, after the accident, by the direction of the ambulance surgeon, the plaintiff was put into the ambulance and taken to the defendant's hospital. To meet that, the defendant relied on the testimony of Williamson, the liveryman, who testified in effect that, pursuant to some arrangement with the defendant, the exact terms of which were not disclosed, he was in the habit of sending to the defendant's hospital, upon call, a horse and driver for the ambulance; and that he employed and paid Flood, the driver, whose negligence caused the accident. He further testified as follows:

"Q. Did the defendant have any right to discharge Flood? A. Well, they could have sent him back; he was in my employ. By the Court: Q. He asks you whether the hospital people had any right to discharge your driver? A. Yes, sir; they could have sent him home; they could discharge him after; I could not send him up if he did not suit them."

"Q. Would you have discharged him then? A. Well, if I could not work him there, I would have to discharge him. He had some other duties besides

driving the ambulance. He was the regular driver of that ambulance from the time the other party died; was driving before that. * * * On the 21st of May, 1904, we had three or four drivers in our employ whom we sometimes sent on these ambulance calls, and we would select whichever one would be in to go. This man was not always sent; if he was not in, we could not send him."

"At the time this accident happened, Flood was then the regular driver for the ambulance. I don't remember any telephone call coming in from the hospital that day."

"But I know the course of business was that they would send up for a driver and a horse when they wanted one. * * * My arrangement as to the hospital authorities under whose direction he should be when I furnished him to the hospital was, he would have to get the directions to go to the hospital."

"I did not attend to that at all after he left my stable and went to the hospital; for the time he was gone from my stable, back to the time he returned to it, I did not give him any direction at all as to what he should do or where he should go."

The question on this branch of the case is: Who ran the ambulance, Williamson or the defendant? Differently stated, did Williamson, as an independent contractor, undertake to drive it, the defendant being concerned only with the result, i. e., the arrival of it at its destination in proper time; or did the defendant, with a hired horse and driver, run the ambulance and retain control of the means and method of attaining that result? Did Williamson retain control of Flood, the defendant having the right only to direct him where to go, and perhaps how fast to drive, or did Williamson for the time being surrender the control of him to the defendant? At the best, Williamson's testimony, so far as it bears on those questions, is too equivocal to justify a nonsuit in the face of the plaintiff's prima facie case.

The defendant also called Dr. Moorhead, the ambulance surgeon, who testified that, when the accident occurred, the ambulance in his charge was on its way to get a patient, whether a pay patient or not he did not know, and that for such services the defendant usually made a charge. He further testified as follows:

"I think I had charge of the ambulance then. I gave directions to the driver that day. * * * I told him to make time. I certainly did tell him to go fast. * * * My ambulance and the horse were not close up to the curb. I made a short turn past that corner."

It seems to me that the testimony of the two witnesses, above referred to, in connection with the circumstances constituting the plaintiff's prima facie case, the nature of the service in which the driver was engaged, and the fact that by reason of it he had special privileges in the streets, not only presented a question of fact, but justified a finding to the effect that, at the time of the accident, Flood was in the employ, and subject to the control, of the defendant.

No doubt the accident happened by reason of the driver's attempt "to make time." The negligence consisted in cutting a short corner in violation of the city ordinance. I think that the jury was justified in finding that the defendant had the right to direct how he should turn the corners, if, indeed, the ambulance surgeon in charge did not actually exercise that right. The maxim "respondeat superior" is applied to make men accountable for the conduct of their own affairs, and to insure such accountability the master is not permitted to deny

that the servant had authority. So far as the presence and acquiescence of the ambulance surgeon in charge could give it, Flood certainly had implied authority to cut, the corners, even if he was not actually directed to do it..

The case does not seem to me to be at all like that of the ordinary hiring of a livery turnout, or of the employment of a truckman to transport goods, in which cases the driver remains the servant of the independent contractor. For the purposes of this case, the defendant may be regarded as in the position of the liveryman or the truckman, and as having hired the horse and servant of another for temporary use in its business, the servant becoming ad hoc its servant. It seems to me that Baldwin v. Abraham, 57 App. Div. 67, 67 N. Y. Supp. 1079, affirmed 171 N. Y. 677, 64 N. E. 1118, and Howard v. Ludwig, 57 App. Div. 94, 67 N. Y. Supp. 1095, affirmed 171 N. Y. 507, 64 N. E. 172 are controlling. The case of Moore v. Stainton, 80 App. Div. 295, 80 N. Y. Supp. 244, relied on by the appellant, is plainly distinguishable. In that case the truckman, contracting independently, retained the control of his men.

The judgment should be affirmed.

Judgment and order affirmed, with costs.

HIRSCHBERG, P. J., and WOODWARD, J., concur.

RICH, J. I dissent. The crucial question presented upon this appeal is whether the trial court erred in denying the defendant's motion to dismiss the complaint, made at the close of the evidence, upon the ground that the plaintiff had failed to establish that the driver of the ambulance was the servant'of the defendant at the time of the accident, and in submitting that question to the jury over defendant's objection and exception.

The defendant is a charitable corporation, maintaining a hospital in Brooklyn, at which it receives, treats, and gives surgical attention to patients applying for such service and those sent to it by outside physicians. It owns an ambulance, lettered on the sides "St. John's Hospital," which is used for conveying patients to the institution. Owning no horse, its officers made an arrangement with one Williamson, a livery stable keeper, whereby upon telephone call he should cause one of his horses to be attached to the ambulance, furnish a driver, and send the rig to the hospital immediately. The defendant furnished a cap to be worn by the driver, having upon it the same lettering as was upon the ambulance. On arriving at the hospital the driver was directed where to go, and a hospital surgeon accompanied him for the purpose of rendering aid to the patient, if required, while on the way to the hospital. Ordinances of the city of New York gave ambulances the right of way over all vehicles except those carrying the United States mail, and required a vehicle turning to the left into another street to pass to the right of and beyond the center of the street intersection before turning. On the day of the accident a physician, in no manner connected with the hospital, telephoned that he had a patient whom he wished brought to the hospital at once for an operation. Some officer of the institution telephoned Williamson for

the ambulance. The latter caused one of his horses to be attached to it, gave the charge of the rig to one of his drivers, Flood, and sent it to the hospital. On arriving there the driver was told where to go. Defendant's house physician entered the ambulance, occupying a seat at its rear, and the driver started for the place of destination. In proceeding, he passed through Decatur street, which is an east and west street, turning northerly into Lewis avenue, which is a north and south avenue. As the ambulance approached Lewis avenue, the plaintiff, riding a bicycle, was passing south on that avenue. The horse was being driven on a fast trot, and the driver did not observe the requirements of the ordinance in turning, but made a short cut across the northwest corner of the streets, coming into Lewis avenue on the same side of the street as that on which plaintiff was riding, and collided with him at the street intersection, inflicting the injuries for which he has recovered.

The contention of the respondent that the question as to whether the relation of master and servant existed between the appellant and the driver of its ambulance is stare decisis, because of the reversal of the judgment on the former appeal, is without merit. The only question then considered was whether a charitable corporation was liable for the negligence of its servants resulting in injury to persons not patients or beneficiaries of the institution (128 App. Div. 214, 112 N. Y. Supp. 566); but even if it was decided that the driver was defendant's servant, it is not too late to correct that error. The question before the trial court upon the motion for a dismissal of the complaint was as to whose servant Flood, the driver of the ambulance, was. Was he the servant of the defendant, or of Williamson? Necessarily this was a vital question, because, in order to render the defendant liable for the negligence of the driver, it must have been established that the relation of master and servant between the defendant and Flood existed; otherwise, the defendant was entitled to a dismissal of the complaint. I do not regard the evidence as being sufficient to establish the existence of this relation, and I am of the opinion that the denial of the defendant's motion for a dismissal of the complaint upon that ground was error.

When plaintiff rested his case, he had proven that the name of the defendant's hospital was printed upon the sides of the ambulance, and on the cap of the driver, and that after the accident he was placed in the ambulance by direction of defendant's house physician and taken to such hospital, which was sufficient to establish, prima facie, that the horse and ambulance were the property of the defendant and that the driver was in its employ. But when the testimony was closed a very different question was presented. The prima facie case had been met and overcome by undisputed evidence, which the court was not at liberty to disregard, conclusively establishing that the defendant did not own the horse drawing its ambulance, did not employ or pay the driver, and did not possess the power or right to discharge him. Flood was a servant of Williamson, selected and paid by him for the service he was performing, and Williamson alone possessed the power to discharge him. He was employed, paid, and sent out with the ambulance by Williamson, and not by the defend-

ant. There is no proof that the latter undertook to exercise the right to direct or control the driver in any detail, except as to where to drive and whether to go fast or slow, or that it had such right. The relation of the defendant in this respect is no different from that of a person who hires a carriage of a liveryman, and directs where to drive and at what rate of speed he should go, where, so far as I am aware, it has always been held insufficient to establish the relation of master and servant, or make the negligence of the driver imputable to the person hiring the carriage. With these facts established, there was no possible basis upon which the jury could find that Flood was the servant of the defendant.

Among the many cases in this state in which this question has been considered are the following: Richardson v. Van Ness, 53 Hun, 267, 6 N. Y. Supp. 618; Lewis v. Long Island Railroad Co., 162 N. Y. 52, 56 N. E. 548; Walsh v. Reisenberg, 94 App. Div. 466, 89 N. Y. Supp. 58; Johnson v. Netherlands A. S. Navigation Co., 132 N. Y. 576, 30 N. E. 505. The same rule has been declared in Massachusetts (Driscoll v. Towle, 181 Mass. 416, 63 N. E. 922; Reagan v. Casey, 160 Mass. 374, 36 N. E. 58); in California (Stewart v. California Improvement Co., 131 Cal. 125, 63 Pac. 177, 724, 52 L. R. A. 205); in Colorado (Frerker v. Nicholson, 41 Colo. 12, 92 Pac. 224, 13 L. R. A. [N. S.] 1122); in Michigan (Joslin v. Grand Rapids Ice Co., 50 Mich. 516, 15 N. W. 887, 45 Am. Rep. 54); in New Jersey (N. Y., L. E. & W. R. R. Co. v. Steinbrenner, 47 N. J. Law, 161, 54 Am. Rep. 126); and by the federal courts, Little v. Hackett, 116 U. S. 366, 6 Sup. Ct. 391, 29 L. Ed. 652; Quinn v. Complete Electric Const. Co. (C. C.) 46 Fed. 506. If it be conceded as a fact that Flood was the regular driver of, or usually drove, the ambulance, it is immaterial, because, being an employé of Williamson, selected by him for that service, he could not by frequency of performance create the relation of master and servant between himself and the defendant, or make the latter liable for his negligence. Catlin v. Peddie, 46 App. Div. 596, 62 N. Y. Supp. 76.

Upon the facts presented, it is clear to me that the driver of the ambulance was not the servant of the defendant, but remained the servant of Williamson; that the relation of master and servant was not shown to have existed between Flood and the defendant at the time of the accident; and I must therefore vote to reverse the judgment and order from which this appeal is taken.