Patrick J. Lee, Appellant, *v.* Cranford Company, Inc., Respondent.

Second Department, February 21, 1918.

Master and servant — negligence — liability of general employer for negligence of his servants, causing injury to servant of special employer — remedy under Workmen's Compensation Law.

Plaintiff, who had been employed for over two years by a special employer and had been working for the defendant for more than a month, was directed by defendant's servant to haul a load of lumber already loaded on one of defendant's trucks, to which he transferred his employer's horses. After the lumber had been drawn to the place of delivery and while plaintiff was standing by the horses pending the unloading he was hit by a piece of timber, negligently handled by defendant's servants. The horses merely drew loads for the defendant usually in the plaintiff's employer's wagons, and exceptionally in the defendant's wagon. The defendant's employer owning horses, trucks, and hiring drivers had made an agreement with the defendant for the use thereof and had sent them upon the work where directed by the general employer's superintendent.

*Held*, that the plaintiff has a remedy against the defendant under the Workmen's Compensation Law, and hence his action for negligence cannot be sustained.

BLACKMAR, J., dissented.

REARGUMENT of an appeal by the plaintiff, Patrick J. Lee, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 15th day of March, 1917, upon the dismissal of the complaint by direction of the court after a verdict had been rendered in plaintiff's favor.

An appeal is also taken from an order entered in said clerk's office on the same day setting a side the verdict of the jury in plaintiff's favor in the sum of $5,000.

*Ralph G. Barclay [Frank V. Johnson* and *Matthew T. Abruzzo* with him on the brief], for the appellant.

*George A. Blauvelt*, for the respondent.

THOMAS, J.:

If the plaintiff, injured by the defendant's servants, has a remedy against the defendant under the Workmen's Compensation Law, this action may not be sustained. The jury found that the plaintiff was not in defendant's employ; the court decided that he was, and dismissed the complaint. The facts are few and simple, whatever the inferences that should be drawn. Muldoon, owning horses, trucks, and hiring drivers, from time to time made agreements with the defendant and others for the use of the outfits at agreed prices per day. The defendant was engaged in an undertaking that required the use of many teams and drivers in addition to its own horses and drivers. Besides Muldoon, there were ten or fifteen other persons with whom defendant made similar arrangements. At the outstart, defendant's superintendent told Muldoon that he needed seven or eight teams for the next day and told him where to send them, and the teams came and were distributed upon the work, and Muldoon sent his bill weekly. The teams were used in such work as the defendant's servants directed. Plaintiff had, on April 17, 1915, been employed by Muldoon for over two years, and had " been off and on with Cranford before the accident "

for more than a month. On the day in question he was directed by defendant's servant to haul a load of lumber already loaded on one of defendant's trucks, to which he transferred his horses. After the lumber had been drawn to the place of delivery, and while plaintiff was standing by the horses pending the unloading, whereupon he would return to defendant's work, he was hit by a piece of timber negligently handled by defendant's servants. The driver and the team during the time for which defendant made compensation, were entirely devoted to the service of transportation. The plaintiff's hand was not otherwise put to the work. The horses merely drew loads for the defendant, usually in Muldoon's wagons, exceptionally, as in the present case, in defendant's wagon. Defendant's superintendent testified: " The foreman at the shaft gives them instructions what to do. * * * Q. He tells them where to take the stuff, or what stuff to take? A. Tells them to take a load of dirt and dump it, or take a load of lumber to the different shafts. Q. Wherever it is wanted? A. Yes, sir. * * * If a driver came there and got drunk on the job, we would lay him off. If we did not lay him off, we would call up Muldoon and tell him to send another driver up, or we would send his team back. If the driver would not do what we told him, we would send him home." It is due to the learned counsel for the appellant that notice should be taken of some views presented by him, although they may not influence the present decision. When plaintiff entered Muldoon's employment, presumably there were terms stipulated, and the law implied others not mentioned, among them that the master would use legal care to furnish plaintiff with reasonably safe wagons and horses, and so maintain them; that he would use the required care to employ properly competent fellow-servants; that he would do his duty respecting the provisions of law enacted to throw safeguards about the plaintiff. It is unnecessary to enlarge on the mutual implied duties of masters and servants or to consider the servant's assumption of the risk of his employment, and his duty to use care lest his own negligence contribute to his injury. Whatever the obligations of the plaintiff and his employer Muldoon, they existed when plaintiff left

his master's premises on the morning in question, and attended
the plaintiff at least until he reached the defendant's place
of work. It is necessary to take a survey of that. The
defendant was a contractor carrying forward within the
activities of a great city a public work of much range and
diversity. To it were summoned for participation here and
there, and appointed to varied occupations, men in direct
employment of the defendant, and there were supplied the
numerous facilities and appliances that are assembled for
the complex uses of such a project. The men immediately
employed, and the defendant, had the relation of master
and servants, which imposed various and ever-shifting duties,
and, as to third persons, each man within the scope of his
employment was the defendant itself. Arrived also at such
place was the plaintiff, a half dozen or more of his master's
teams and drivers, and similar equipment, vehicles and men
from ten to fifteen other trucking establishments. By this
system all of these units, foreign to immediate hiring, reported
to defendant's agents and received orders committing them
to share in the work, so that plaintiff and every other driver
might come in contact, hurtful or otherwise, with each and
all the others, as well with the difficulties and perils of the
work existing in the nature of it, or in the manner of its
execution, as well, also, with the instrumentalities that the
defendant had outlayed to meet the necessities and exigencies.
Every workman that defendant *directly* employed became its
servant. Every tool, every machine, every structure that
defendant supplied, became a part of the plant. Towards
all that made up the ensemble, defendant owed a duty. In
such case defendant's wagons and horses must be selected
with care and so maintained; every mechanical contrivance
must conform to legal requirements at least so far as due
care will permit. Everything that makes for a safe place
to work must receive similar attention. Every servant must
be selected with due regard for his competency. Every one
exercising acts of superintendence may involve the defendant
in liability to his employees. Every statute that regulates
the relation of master and workman comes into play. Every
culpable and injurious act of a servant, done in the course
of his employment, makes the master liable, if the master

doing the act directly would have been liable. Did plaintiff, arriving as Muldoon's servant, become defendant's servant upon entry into association in the work? Did Muldoon's horses, harness and truck become a part of defendant's plant? Look at it first as between plaintiff and defendant and defendant's servants, and then as between defendant and third persons. If plaintiff became defendant's servant, all of defendant's immediate servants, and all the teamsters present through arrangements with trucking firms, became fellow-servants. Did plaintiff take the risk of them, and did they each and all assume the risk of him, so far as the law imposes such risk? Did the master impliedly agree with each and every man connected with the affair that he had selected plaintiff as his servant and that he had used due care in his selection and that he would continue to use care? And did defendant impliedly make a similar agreement with plaintiff as to every man in the works? Did defendant agree to the care required by law as between master and servant as to his works, ways and plant, and to all that the labor laws demand? Did Muldoon's servant, sent there "off and on," impliedly agree that he would release defendant for any liability for injury through the negligence of its servants or agents, or itself, except so far as he was entitled to recover as defendant's servant? In short, did defendant become the master and plaintiff its man? The fact is that defendant did not use any care in hiring Muldoon's team, or man. It did not know whether any part of the equipment was fit for the work beyond its knowledge of the reliability of Muldoon. It did not intend to present plaintiff as its servant and did not do so. It did not agree as to its other servants to accept Muldoon's team and the numerous other teams as its responsibilities. Plaintiff had no thought that he was becoming defendant's servant. Plaintiff, Muldoon's horses and truck were hired by agreement with their owner to draw material, put on and off the wagon by defendant's servants. Plaintiff went where his master sent thim. To refuse was to be discharged. It is not a fair inference of law or fact that plaintiff impliedly agreed that the members of the great company of workmen were his fellow-servants, or that towards the work that involved tearing down and building up he stood in the

relation of a servant to defendant, as if he had been handed over from hand to hand like a commodity. But go further. If a third person were injured by plaintiff's negligence, would the defendant have been liable? It would have been so liable within the decision of this court in *Kellogg* v. *Church Charity Foundation* (135 App. Div. 839). But that decision was reversed by the Court of Appeals. In the present case it appears that the load was thrown off at Flatbush. In the course of it defendant's men let a timber hit plaintiff. Was plaintiff then defendant's servant? Shall it be said that he was not defendant's servant as to an innocent third person, but was his servant as to mere unloading? If in the *Kellogg* case the driver in going around the course had thrown out the hospital doctor, would the plaintiff then have become the servant of the hospital? If in lifting something to the ambulance, the ambulance attendants had injured the ambulance driver, would all have become fellow-servants of the hospital? If in driving to Flatbush the plaintiff had negligently injured the two men with him, would plaintiff as to them have been defendant's servant? Is a driver defendant's servant accordingly as his negligence injures defendant's servant, or a third person? The opinion in the *Kellogg Case* (203 N. Y. 191, 195), after referring to certain facts, says: " But, as Mr. Justice RICH points out in the able dissenting opinion below, when the case was closed a very different state of facts was presented. ' The *prima facie* case had been met and overcome by undisputed evidence, which the court was not at liberty to disregard, conclusively establishing that the defendant did not own the horse drawing its ambulance, did not employ or pay the driver, and did not possess the power or right to discharge him.' " Each one of such facts appears in the present case, and if they are decisive plaintiff was not defendant's servant as to this accident. Indeed, the facts of that case and the present one are beyond distinguishment, except as to the nature and quantities of work done by Muldoon's team. In each case a man let teams to draw loads in the defendant's business, and the only order given him was to go to one place or another to receive and to deliver his load. In the *Kellogg* case it was decided by the Court of Appeals that the relation of master and servant did

not exist between the driver and the defendant. But it was said " that cases may arise in which there is such active interference by the hirer with the management of the team as to render him responsible for any negligent injury which may be inflicted upon a stranger by reason of such mis- management. (*Donovan* v. *Laing, etc., Construction Syndicate,* L. R. [1 Q. B. D. 1893] 629.) In that event, however, as was pointed out by Lord Justice BOWEN in the case cited, the hirer becomes liable ' not as a master, but as the procurer and cause of the wrongful act complained of.' " The opinion then distinguishes *Baldwin* v. *Abraham* (57 App. Div. 67; affd., 171 N. Y. 677), where the " testimony indicated that the defendants exercised some control over the delivery of their goods " by the hired wagons, and *Howard* v. *Ludwig* (171 N. Y. 507), where the driver reported each morning with the team at the defendants' place of business, there received a list of deliveries from the defendants' clerk, loaded the goods, delivered them to various customers, and thereupon returned to the stable of the contracting truckman, and where it was held such arrangement and practice created the relation of master and servant between him and the defendants so that they became liable for his negligent acts. The opinion in the *Kellogg* case proceeds: " The distinction between such cases and one like the present is well pointed out by Mr. Justice MOODY in *Standard Oil Co.* v. *Anderson* (212 U. S. 215). Where one furnishes another with men to do work for him and places them under his exclusive control in its performance those men become *pro hac vice* the servants of him to whom they are furnished and he is responsible for their negligence because the work is his work and they are his workmen for the time being. On the other hand, where work is undertaken to be performed by the person who furnishes the workmen through servants of his selection and he retains direction and control he remains responsible for any negligence on their part in the conduct of the work." Mr. Justice MILLER in the *Kellogg Case* (135 App. Div. 844) wrote: " The maxim *respondeat superior* is applied to make men accountable for the conduct of their own affairs, and to insure such accountability, the master is not permitted to deny that the servant had authority." The Court of Appeals considered that the

facts did not bring the case within the maxim. In *Schmedes* v. *Deffaa* (153 App. Div. 819) Mr. Justice MILLER in a dissenting opinion restated the proposition: " Every man should be held answerable for the conduct of his own business, and for the agencies employed by him in this business, whether animate or inanimate," and he brought the test to the inquiry whether the servant was doing the defendant's work at the time of the accident. In the *Schmedes* case a livery stable keeper undertook to fill an order from an undertaker for carriages, and, not having sufficient conveyances of his own, procured one with a driver from another stablekeeper, who directed him to report and to take the orders of the defendant. The defendant sent him to the undertaker, who directed him to go to the house where the funeral was to be held and then proceed to the cemetery. It was decided by the Appellate Division that the defendant was not liable for the negligence of the driver under the doctrine of *respondeat superior*, but the judgment of that court was reversed upon the opinion of Mr. Justice MILLER (214 N. Y. 675). The record does not show the relation of the person injured to the team, but I gather that he was a third person. It was not urged that the undertaker was liable, but the question was between the owner of the team and the defendant, who had agreed to make provision for the funeral. In the opinion in the Appellate Division it was said: " It was stipulated at the trial that the horses, carriage and driver came from Naughton [the owner of the team], and the evidence showed that all defendant had to do with them was to hire them from Naughton and immediately let them to Herlich [the undertaker]. Except as the driver had been directed to go where defendant ordered, the latter had no control over the driver and no authority to employ or discharge him." By that decision it appears that if one person hire a team and carriage and send it to an undertaker to be used at a funeral, the driver becomes *pro hac vice* the servant of the hirer, at least as to third persons. The case last cited closed the inquiry whether Lee, the present plaintiff, should be regarded as the defendant's servant as to one injured by his negligence while driving the team. But was he defendant's servant as between plaintiff and the servants who injured him? I do not extend the discussion in that

regard. In *Matter of Dale* v. *Saunders Brothers* (171 App. Div. 528) a proprietor of a sand bank hired a team and teamster from a manufacturer of brick to draw sand from the pit, and while the teamster was loading the wagon the sand bank fell. It was decided that the driver was entitled to the protection of the Workmen's Compensation Law, and that either the proprietor of the sand pit, the special employer, or the brickmaker, the general employer, could be held liable. It appeared that the teamster was loading sand in the wagon for the purpose of carting it when he was injured, but the court said he was operating the wagon just as much as if he had been driving on the road. In that particular case Saunders Brothers, the general employers, were regarded as liable for the compensation. But the opinion states that the special employer might also be liable. The decision was affirmed (218 N. Y. 59). It was indicated by the Appellate Division that the question of *respondeat superior* had little influence upon the decision. The opinion in the Court of Appeals, after concluding that the general employer was the master at the time of the accident, says: " All this seems clear, but in any event the decision of the commission is final as to questions of fact. (Workmen's Compensation Law, § 20.) The jurisdiction of this court is limited to the review of questions of law, and if any question is presented upon the facts stated as to whose employee Dale was it is one of fact only." But POUND, J., writing for the court, said: " In negligence cases the question often arises as to the proper application of the doctrine of *respondeat superior* when an employee whose negligence causes an accident is at the time in the general pay and service of one and under the control and direction of another. The latter has been held liable as a special employer when it could be said that the employee was his servant at the time of the accident in a sense and degree which served to impose liability for negligence. (*Higgins* v. *Western Union Telegraph Co.*, 156 N. Y. 75; *Howard* v. *Ludwig*, 171 N. Y. 507.) The question, who is the master, also arises at times in employees' actions for negligent injuries. But the question in this case is not one of responsibility for negligent injury inflicted upon strangers nor upon an employee. The doctrine of *respondeat superior* has no application here, nor are the

rules of employers' liability for negligence controlling."
So there might be some doubt whether in the present case
plaintiff was the defendant's servant, but that question does
not seem to be essential in determining whether the act was
applicable. In *Matter of De Noyer* v. *Cavanaugh* (221 N. Y.
273) claimant's intestate was driver of a truck owned by the
defendant company, for the operation of which the employer
of the decedent furnished a horse and driver, and his death
was caused by the explosion of a can of gasoline which he
was delivering in the course of his duty, and it was decided
that an award was properly made against the employer.
But in *Matter of Nolan* v. *Cranford Co.* (219 N. Y. 581, affg.
171 App. Div. 959) an award was sustained for the death of
one Nolan, one of the drivers of a team furnished to the
defendant by Kane, who paid the drivers their wages. The
court in *Matter of De Noyer* v. *Cavanaugh* explained that there
was no inconsistency in its decision in that case and in *Matter
of Nolan* v. *Cranford Co.*, inasmuch as employees " under the
Workmen's Compensation Law  *  *  *  may, so far as its
provisions are applicable, look to the one or to the other or
to both for compensation for injuries due to occupational
hazards,  *  *  *  and the industrial commission may make
such an award as the facts in the particular case may justify."
Under such ruling there should be no hesitation in deter-
mining that the plaintiff in the present action has a remedy
under the Workmen's Compensation Law, in which case the
present action cannot be sustained, and the judgment and
order should be affirmed, with costs.

JENKS, P. J., MILLS and KELLY, JJ., concurred; BLACKMAR,
J., dissented on the ground that before plaintiff can recover
compensation under the Workmen's Compensation Law it
must be decided by the Commission as a question of fact that
defendant was master, and that such relation did not exist.

Judgment and order affirmed on reargument, with costs.